## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

TROY FRANCIS                                    )
                                                )
                    Plaintiff                   )          Civil Case No. 2010/30
                                                )
                    v.                          )
                                                )
BRIDGESTONE CORPORATION;                        )
BRIDGESTONE FIRESTONE NORTH AMERICAN            )
TIRE, LLC.; and BRIDGESTONE/FIRESTONE, INC.     )
                                                )
                    Defendants.                 )
_____  )

**MEMORANDUM OPINION AND ORDER DEFERRING DEFENDANT
BRIDGESTONE CORPORATION'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION, GRANTING PLAINTIFFS'S REQUEST FOR LIMITED
DISCOVERY AND GRANTING BRIDGESTONE CORPORATION'S MOTION TO
DISMISS PLAINTIFF'S PUNITIVE DAMAGES CLAIM**

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Bridgestone Corporation's Motion to

Dismiss for Lack of Personal Jurisdiction.   Defendant Bridgestone also moves to dismiss

Plaintiff's claim for punitive damages.   For the reasons discussed below, the Court defers ruling

on the personal jurisdiction issue until Plaintiff has an opportunity to conduct limited

jurisdictional discovery.   The Court grants Bridgestone's motion to dismiss Plaintiff's punitive

damages claim.

### I.      **Facts**

On February 9, 2008, Plaintiff Troy Francis was operating his 2005 Mitsubishi Lancer

automobile equipped with a Bridgestone Potenza tire on the Melvin Evans Highway in St. Croix,

Virgin Islands. (Compl. ¶ 7, Doc. 1)[1] The tread on the Potenza tire separated causing Plaintiff's vehicle to leave the road and overturn. (*Id.*) Plaintiff suffered severe and permanent injuries during the accident. (*Id.*) Plaintiff alleges that Defendants Bridgestone Corporation, Bridgestone Firestone North American Tire, LLC, and Bridgestone/Firestone, Inc. (hereafter collectively referred to as "Defendants") defectively and negligently manufactured the Potenza tire and brings claims for strict liability and negligence against them. Plaintiff also asks for punitive damages. (*Id.* at ¶¶ 11-20)

Defendant Bridgestone Corporation ("Bridgestone") is a Japanese corporation headquartered in Tokyo. (Aff. of Yuichi Hashiguchi ¶ 4, Doc. 9-1)[2] Bridgestone designs, manufactures and sells tires in Japan. (*Id.* at ¶ 5) It claims that it does not conduct any business in the U.S. Virgin Islands. (*Id.* at ¶¶ 14-15) From Bridgestone's perspective, it makes tires in Japan, sells them in Japan, and has no control over where those tires eventually hit the pavement. (*Id.* at ¶ 6) Bridgestone Firestone North American Tire, LLC, now known as Bridgestone Americas Tire Operations or "BATO", a Delaware corporation that manufactures, sells and distributes tires in the United States, is indirectly owned by Bridgestone. (*Id.* at ¶¶ 7-8)[3]

Bridgestone claims that it has no contacts with the U.S. Virgin Islands. Specifically, Bridgestone alleges that it is not licensed to do business in the U.S. Virgin Islands, does not have a registered agent for service of process in the U.S. Virgin Islands, does not transact business in

---

[1] All ECF references are to Civ. Case No. 10-cr-00030, unless otherwise specified.

[2] Mr. Hashiguchi indentifies himself as a "Manager in Bridgestone's Legal Department" who has been employed in the legal department since 1991. (Hashiguchi Aff. ¶ 1)

[3] The Firestone Tire & Rubber Company ("Firestone") was founded in 1900. Bridgestone acquired the stock of Firestone in 1988. Firestone was renamed Bridgestone/Firestone Inc. In December 2001, Bridgestone Firestone North American Tire, LLC became the successor to Bridgestone/Firestone Inc. In January 2009, Bridgestone Firestone North American Tire, LLC changed its name to Bridgestone Americas Tire Operations L.L.C. (Hashiguchi Aff. ¶¶ 7-8) Throughout this opinion, these entities may be referred to Firestone, Bridgestone/Firestone or BATO.

the U.S. Virgin Islands, does not own any property in the U.S. Virgin Islands, has no agents or sales representatives in the U.S. Virgin Islands, has not entered into a contract in the U.S. Virgin Islands, and has not filed any claims in courts in the U.S. Virgin Islands.  (*Id.* at ¶¶ 14-17)

Bridgestone also claims that it and BATO are separate corporations and that it does not conduct business in the United States through BATO, does not control BATO's daily operations, maintains formal barriers between it and BATO, and does not control or participate in the marketing or sales decisions of BATO.  (*Id.* at ¶¶ 17-18)

Plaintiff, on the other hand, contends that Bridgestone, through its agent BATO, "actively conducts business in the U.S. Virgin Islands."  (Pl.'s Opp. 5, Doc. 11)  In support of this contention, Plaintiff offers several Bridgestone corporate documents, public statements and webpages.  (*See, e.g.*, Doc. 11-20, *How Bridgestone works* ("In replacement tires, Bridgestone distributes tires through extensive networks of specialty tire stores, gas stations, repair garages, and general retailers.  Those networks include nationwide chains of company-owned stores in Japan and the United States."); Doc. 11-20, Bridgestone Annual Report 1999 – *A Word from the President* ("We bolstered our North American presence by starting mass production of passenger car and light truck tires at our new, state-of-the-art plant in Aiken County, South Carolina."); Doc. 11-21, Bridgestone Annual Report 1999 – *Year in Review: The Americas*  ("We posted generally strong sales in the Americas in 1999. In dollars, sales at our companies in the region were up 1.5% to $7.6 billion . . . . Our North American operations are approaching a market share of 20% and we have become the continent's second-largest supplier of tires . . . . In the replacement market, we promote our tires through diverse channels, including 1,550 company-owned stores."))[4]  Plaintiff has also tendered evidence that at least ten individuals have served on

---

[4] Plaintiff offers other evidence that it contends demonstrates Bridgestone's control over BATO,

the board of directors for both Bridgestone and BATO.   (*See* Bridgestone/Firestone Inc.,

Supplemental Interrog. Resps. in MDL Litigation, Doc. 11-24)

Bridgestone claims that the subject tire, a 205/50R16 Bridgestone Potenza RE030 tire,

was designed and manufactured in Japan by Bridgestone in 1998. (Hashiguchi Aff. at ¶ 10)[5]

The subject tire was developed by Bridgestone for Subaru for use as original equipment

"destined and intended" for sale in the European market and sold to Subaru in Japan.  (*Id.* at ¶¶

10-11)  In addition, approximately 1,000 of the subject tires were purchased from Bridgestone in

Japan for use as replacement tires in Australia, Europe, and the Middle East. (*Id.* at ¶ 11)

Bridgestone claims that it never sold the subject tire for use in the U.S. market and that it ended

up in the U.S. Virgin Islands "as a result of fortuitous actions by parties other than Bridgestone,

independent of any distribution channel employed by Bridgestone with respect to the subject

tire." (*Id.* at ¶ 13)[6]

## II.   Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges whether the Court has

personal jurisdiction over a defendant.   "Once a defendant challenges a court's exercise of

personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction."

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009)

(citation omitted).  However, when no evidentiary hearing is requested or held, a plaintiff only

needs to "establish a prima facie case of personal jurisdiction" and is entitled to have his or her

---

discussed more fully below.
[5] Hashiguchi claims that Bridgestone was able to determine this based on the subject tire's "DOT number."  (*Id.*)   As the Complaint does not allege this DOT number, the Court does not know how Bridgestone became aware of it.
[6] In its reply brief, Bridgestone states that Plaintiff purchased the subject tire in "used" condition.

"allegations taken as true and all factual disputes drawn in [his or her] favor." *Id.* (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)); *see also Ford v. Amber Cape Prods., LLC*, 2010 WL 3927321, at *4  (D.V.I. 2010) ("The Court has not held a hearing on Defendants' motion to dismiss for lack of personal jurisdiction. The Plaintiffs' burden is therefore limited to a prima facie showing.").[7]

To make a *prima facie* showing of personal jurisdiction, the plaintiff must "establish[ ] with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992);  *see Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) ("A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict.") (internal quotations omitted).

> A Rule 12(b)(2)  motion ... is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

### B. <u>Analysis</u>

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *D'Jamoos*, 566 F.3d at 102 (citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987)); *see also* Fed. R. Civ. P. 4(k)(1)(A).  "Establishing personal jurisdiction in the Virgin Islands involves a two-part analysis. First, there must be a statutory basis for exercising

---

[7] Neither party requested a hearing.

jurisdiction over the nonresident defendant in accordance with the Virgin Islands Long-Arm Statute, V.I.Code Ann. tit. 5, § 4903, and second, the nonresident defendant must have minimum contacts with the Virgin Islands sufficient to satisfy constitutional due process." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) cited with approval by *In re Najawicz*, 52 V.I. 311, 336-37, 2009 WL 3088327, at *38 (2009).[8]

### i. The Virgin Islands Long Arm Statute

As relevant here, the Virgin Islands long arm statute, 5 V.I.C. § 4903, provides that:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's

(1) transacting any business in this territory;

. . . .

(4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other

---

[8] This Court previously held that "the Virgin Islands' long-arm statute is coextensive with the maximum perimeters of the due process clause." *Urgent v. Technical Assistance Bureau, Inc.*, 255 F. Supp. 2d 532, 535 (D.V.I. 2003). However, in *Metcalfe*, the Third Circuit independently analyzed application of the Virgin Islands long arm statute and the due process inquiry:

> As our dissenting colleague points out, there is caselaw which states that the reach of the Virgin Islands Long-Arm Statute is coextensive with the maximum parameters of the Due Process Clause and therefore concludes that only constitutional due process considerations are relevant to determine whether personal jurisdiction can be exercised over a nonresident defendant, *see Urgent v. Tech. Assistance Bureau, Inc.*, 255 F.Supp.2d 532, 535-36 (D.V. I. 2003), but we think it best to consider the statutory bases for exercising long-arm jurisdiction in addition to the constitutional requirements in order to ensure that we are honoring the "law of the forum state."

*Metcalfe*, 566 F.3d at 330, n.4. The Virgin Islands Supreme Court cited *Metcalfe* with approval and applied its two step approach in *In re Najawicz*, 52 V.I. at 336-37. Accordingly, this Court will apply the two step approach as well. *See Vetrotex Certainteed Corp. v. Consol.Fiber Glass Prods. Co.*, 75 F.3d 147, 150 (3d Cir. 1996) ("A district court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper." (citing Fed.R.Civ.P. 4(e))).

persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory.

Plaintiff first argues that this Court has jurisdiction over Bridgestone under the "transacting any business" prong of the long arm statute, 5 V.I.C. § 4903(a)(1).  However, "[t]o invoke jurisdiction over a non-resident defendant under subsection (a)(1) of the Virgin Islands Long Arm Statute, a court must determine whether the claim which is being pursued arises from the non-resident defendant's, or its agent's, forum related activities. . . ." *Hommel v. Scott*, 1996 WL 776632, at *2 (V.I. Terr. Ct. 1996); *see Dickson v. Hertz Corp.*  559 F. Supp. 1169, 1172 (D.V.I. 1983) ("Under our long-arm statute, the "initial determination that must be made is whether the claim . . . which is being pursued arises from the defendant's forum related activities... [T]he court must determine whether there are enough contacts arising out of *that transaction* in order to justify the assertion of jurisdiction over the out-of-state defendant.") (citing *Reliance Steel Prods. Co. v. Watson, Ess, Marshall and Enggas*, 675 F.2d 587, 588 (3rd Cir. 1982) (emphasis in original)).   In other words, for section 4903(a)(1) to apply, the lawsuit must "arise" from some transaction conducted by the defendant (or its agent) in the forum.

Here, Plaintiff has not made a *prima facie* showing that the subject tire arrived in the Virgin Islands as a result of a Bridgestone business transaction in the Virgin Islands.  Plaintiff acknowledges that he purchased the subject tire from Emerald K Tires but has not shown that Bridgestone (or BATO) sold the tire to Emerald K, or that Emerald K is the agent of either. (Pl.'s Opp. 5)  Bridgestone has come forward with evidence that the subject tire was initially sold to Subaru in Japan for use in European markets and that it arrived here "as a result of fortuitous actions by parties other than Bridgestone, independent of any distribution channel employed by Bridgestone with respect to the subject tire."   (Hashiguchi Aff. ¶¶ 10-13)  Plaintiff has not rebutted Bridgestone's proof on this score.   Thus, Plaintiff has not shown that his tort claims

arise from Bridgestone "transacting any business in this territory." V.I. Code Ann, tit. 5 § 4904(a)(1).

Plaintiff next argues that jurisdiction is proper under 5 V.I.C. § 4903(a)(4). Under section 4903(a)(4):

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory.

The first clause – "causing tortious injury in this territory by an act or omission outside this territory" – is easily met.[9]  Plaintiff alleges that Bridgestone negligently manufactured the subject tire and that it was defective (Compl. ¶¶ 14-15, 22-23) and Bridgestone acknowledges that it was manufactured in Japan.  (Hashiguchi Aff. at ¶ 10)  Although the subject tire was manufactured in Japan, Plaintiff's physical injuries occurred here, during the car crash.  *See, e.g.*, *In re Tutu Wells Contamination Litig.*, 846 F. Supp. 1243, 1265 (D.V.I. 1993) (finding that leaking storage tank manufactured outside Virgin Islands and installed on St. Thomas "caused" injury in the Virgin Islands for purposes of section 4903(a)(4)).

The second element of the section 4903(a)(4) is actually three disjunctive clauses: 1) regularly doing or soliciting solicits business in the Virgin Islands; 2) engaging in any other persistent course of conduct; or 3) deriving substantial revenue from goods used or consumed or services rendered, in this territory.  A showing by the Plaintiff on anyone of one of these three clauses is sufficient to satisfy the second element.  Even if no single activity is sufficient, "all three may also be considered in combination. Thus, a defendant's activities, including a course of

---

[9] Bridgestone devotes its briefing efforts to negating the second clause of subsection (a)(4) and advances no specific argument regarding this first clause.

conduct, soliciting business, and deriving revenue from goods being used in the territory, may be sufficient cumulatively to establish a jurisdictional presence, even though no single element would suffice." *Hendrickson v. Reg O Co*., 657 F.2d 9, 12 (3d Cir. 1981) (construing section 4903(a)(4)). "The course of conduct which establishes jurisdiction need have no relationship to the tortious action." *Id*. (citation omitted).[10]

Plaintiff argues that this second element is met because "Bridgestone derives revenue from Bridgestone tires used or consumed in the Virgin Islands." (Pl.'s Opp. 6)   In support of this contention, Plaintiff relies primarily on proof that Bridgestone derives profit from the sale of its tires in the North American market in general.  For example, Bridgestone's 1999 annual report indicates that "sales at our companies in the [Americas] were up 1.5% to $7.6 billion." (Doc. 11-21, Bridgestone Annual Report 1999 – *Year in Review: The Americas*)  The issue of corporate separation between Bridgestone and BATO aside, the problem with this argument is that Plaintiff has offered no proof, other than the sale of the subject tire, that tires manufactured by Bridgestone are sold in the Virgin Islands.  This deficiency is highlighted by the primary case cited by Plaintiff in support of his long arm jurisdiction argument, *Prenger v. Bridgestone Corp.*, Case No. 03-VS-057020 (State Court of Fulton County, Feb. 2, 2005), Doc. 11-3.  There, the trial court held that Bridgestone was susceptible to personal jurisdiction under Georgia's long arm statue for a tort claim arising out of a defective tire.[11]  Relying on similar financial statement

---

[10] While this may be true for the purposes of applying the long arm statute in general, the same cannot be said for determining whether this Court has specific jurisdiction over Bridgestone.

[11] The statute at issue, Ga. Code Ann. § 9-10-91, contains a clause similar to that of 5 V.I.C. § 2903:

> A court of this state may exercise personal jurisdiction over any nonresident . . . as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

material as Plaintiff here, the court found that jurisdiction over Bridgestone under the long arm statute was appropriate because:

> Bridgestone sells its tires through the company-owned stores of its wholly owned Firestone subsidiary.  These are known as the Firestone "MasterCare" stores. . . A quick review of the Firestone MasterCare website shows that they feature and sell Bridgestone tires, including Dueler tires, the same model tire at issue in this case. *These stores are located all throughout Georgia, including* at least four stores in Atlanta.  Thus, Bridgestone distributes its tires to Georgia through its subsidiaries and enjoys the financial benefits of those Georgia sales.

*Id*. at 4 (emphasis added).

Here, in contrast to *Prenger*, Plaintiff has produced no evidence that Bridgestone distributes it tires to the Virgin Islands either on its own, through BATO, or Emerald K.  Thus, on the record before the Court, there are no facts upon which to base a finding that Bridgestone "derives substantial revenue from goods used or consumed or services rendered, in this territory."   Out of an abundance of caution, however, the Court will allow Plaintiff conduct limited discovery on this issue as more fully discussed below.

### ii.  Due Process

To determine whether exercise of personal jurisdiction over Bridgestone would comport with due process, the Court applies the "minimum contacts" test.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This test involves an "assessment as to whether the quality and nature of the defendant's activity is such that it is reasonable and fair to require [that it] conduct [its] defense in that state. . . . As a threshold matter, the defendant must have taken action  . . . purposefully directed toward the forum State." *Metcalfe*, 566 F.3d at 334 (internal quotations and

---

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

citations omitted).

"A plaintiff can meet his burden of showing minimum contacts in one of two ways: by establishing either specific or general jurisdiction over a defendant." *Paradise Motors, Inc. v. Toyota de P.R., Corp.*, 314 F. Supp. 2d 495, 498 (D.V.I. 2004) (citing *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990)); see also Metcalfe, 566 F.3d at 334. Specific jurisdiction is proper "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Metcalfe*, 566 F.3d at 334 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

## 1.  <u>Specific Jurisdiction</u>

"Specific jurisdiction exists when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200-201 (3d Cir. 1998) (citations omitted).  "[S]pecific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (citations omitted).  In conducting the specific jurisdiction analysis, the Court must inquire "whether there was 'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __S.Ct.__, 2011 WL 2518815, at *6 (U.S.

June 27, 2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

In his opposition, Plaintiff implies that specific jurisdiction over Bridgestone is appropriate under the "stream-of-commerce" theory. (*See* Pl.'s Opp. 17 n.57 ("[I]t is likely that Plaintiff will uncover, through discovery, evidence of specific contacts with the subject tire; specifically that Bridgestone places the tire into the stream of commerce knowing that the tires would the reach the U.S. Virgin Islands.")) "Courts have relied on the stream-of-commerce theory to find a basis for personal jurisdiction over a non-resident defendant, often a manufacturer or distributor, which has injected its goods into the forum state indirectly via the so-called 'stream of commerce.'" *D'Jamoos*, 566 F.3d at 104 (citations omitted).[12]  To invoke this theory, Plaintiff must show that the subject tire arrived in the Virgin Islands though "the regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* at 105 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring)).[13]

---

[12]    In many products-liability cases . . . the seller does not come in direct contact with the forum state but does so through intermediaries such as retailers or distributors. In response to this phenomenon, courts have developed the 'stream of commerce' theory by which specific jurisdiction is asserted over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either derived a substantial benefit from the forum state or had a reasonable expectation of deriving a substantial benefit from it.

*Pennzoil Products Co. v. Colelli & Associates, Inc*., 149 F.3d 197, 203 (3d Cir. 1998) (internal quotations and brackets omitted).

[13] The Court notes that in several tire defect cases, courts have applied the stream-of-commerce theory and found Bridgestone subject to specific jurisdiction. *See, e.g., Joss v. Bridgestone Corp.*, 2009 WL 1323040, at *11 (D. Mont. 2009) ("The Court finds that Bridgestone  has delivered its products into the stream of commerce with the expectation that they will be purchased by consumers in Montana, and that it has purposely directed its activities at this forum. It has made efforts to serve, directly or indirectly, the Montana market for tires."); *Tungate v. Bridgestone Corp.*, 2002 WL 31741484, at *4 (S.D. Ind. 2002) (finding that assertion of personal jurisdiction over Bridgestone comported with due process, in part, because "Bridgestone designed the MIX tire at issue in this case. It designed the tire for widespread

Here, application of the stream-of-commerce theory in this case is dubious; Bridgestone avers that it designed and manufactured the subject as original equipment for a Subaru Legacy intended for sale in Europe and that it arrived in the Virgin Islands through the fortuitous acts of third parties and not through any distribution channel employed by Bridgestone "with respect to the subject tire." (Hashiguchi Aff. ¶ 13)  Plaintiff has not come forward with evidence contradicting these claims.  Under these facts, even assuming that Plaintiff could prove that other models of Bridgestone manufactured tires were sold in the Virgin Island through the stream-of-commerce, specific jurisdiction over this case would still be inappropriate.  *D'Jamoos*, 566 F.3d at 105 ("[T]he fact that other Pilatus planes have followed a certain path to Pennsylvania and other states cannot provide the necessary connection between Pilatus and Pennsylvania to support specific jurisdiction in this case, because the aircraft involved here reached Pennsylvania by a series of fortuitous circumstances independent of any distribution channel [defendant] employed. If we held otherwise, we impermissibly would remove the arising from or related to requirement from the specific jurisdiction test and unjustifiably would treat the stream-of-commerce theory as a source of general jurisdiction.").   Accordingly, the record before the Court does not support the exercise of specific jurisdiction over Bridgestone.[14]

---

distribution. Bridgestone foresaw and intended that the model of tire would be distributed across the United States to American consumers, including those in Indiana, for the benefit of Bridgestone. That intended activity is sufficient to support jurisdiction in Indiana."); *Streckenbach et al. v. Toyota Motor Corp. et al*, Case No. 1:05-cv-01352-PSF-PAC, slip op. at 18 (D. Colo. March 9, 2006) (finding exercise of specific jurisdiction proper).

[14] Bridgestone claims that the subject tire was brought to the Virgin Islands "independent of any distribution channel employed by Bridgestone *with respect to the subject tire*." (Hashiguchi Aff. ¶ 13) (emphasis added)  The curious use of the phrase "*with respect to the subject tire*" seems to leave open the possibility that the subject tire reached the Virgin Islands though some other distribution channel employed by Bridgestone.  Out of an abundance of caution, the Court will grant Plaintiff leave to conduct limited jurisdictional discovery as to specific jurisdiction.  *See Taylor v. Bridgestone/Firestone, Inc.*, 2007 WL 3232183, at *1 (D.S.C. 2007) (granting "the Plaintiffs' request to conduct discovery on the specific jurisdiction issue").

### 2.  **General Jurisdiction**

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 2011 WL 2518815, at *3 (citing *Int'l Shoe*, 326 U.S., at 317); *see also O'Connor v. Sandy Lane Hotel Co., Ltd*., 496 F.3d 312, 321 (3d Cir. 2007) ("If the defendant maintain[s] continuous and substantial forum affiliations, then general jurisdiction exists.") (citations omitted).  "When the claim is based on defendant's non-forum related activity, the focus in determining jurisdiction is on the totality of the defendant's activity within the jurisdiction, which must be 'continuous and substantial' to meet due process requirements."  *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1060 (3d Cir. 1982) (citations omitted).  This can be satisfied by showing that there are "ongoing business relationships between [defendant] and Virgin Islands residents."  *Metcalfe*, 566 F.3d at 335. "[T]he plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction."  *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

Plaintiff offers two arguments in support of general jurisdiction.  First, Plaintiff argues that general jurisdiction is proper because Bridgestone itself has substantial direct contact with all U.S. markets, including the U.S. Virgin Islands.  *See, e.g.*, Bridgestone 1999 Annual Report, Doc. 11-21 ("We posted generally strong sales in the Americas in 1999. In dollars, sales at our companies in the region were up 1.5% to $7.6 billion . . . . Our North American operations are approaching a market share of 20% and we have become the continent's second-largest supplier of tires.").[15]  Indeed, other courts have been persuaded by this same argument:

---

[15] Plaintiff also offers documents stating that Bridgestone conducts research in the United States

> I find that Plaintiffs have demonstrated Bridgestone's continuous and systematic contacts with the United States, including markets in Colorado. By manufacturing, marketing, and selling its tires throughout the United States with the intention that Bridgestone tires be the best selling tires in the United States, it may be inferred Bridgestone intends its tires will be in every state, including Colorado. This is particularly true in states which include a larger market, such as the Denver, Colorado metropolitan area.

*Henry v. Bridgestone Corp.*, 2006 WL 1980622, at *6 (D. Colo. 2006) (relying on *In re Bridgestone/Firestone, Inc. Tires Prod. Liability Litig.*, 2001 WL 34691976, at *8 (S.D. Ind. 2001)).

The Court finds two problems with this argument.  First, notwithstanding Bridgestone's statements that it intends to serve every market in North America, nothing in the materials provided by Plaintiff indicates that Bridgestone has any direct contact with the Virgin Islands.  *See Metcalfe*, 566 F.3d at 334 ("As a threshold matter, the defendant must have taken action . . . purposefully directed toward the forum State.").  Furthermore, Bridgestone has come forward with unrebutted evidence disavowing any contact with the Virgin Islands.  (*See* Hashiguchi Aff. ¶¶ 14-17) [16]

Second, Bridgestone's intent to and efforts in serving the entire U.S. market are not enough to subject Bridgestone to *general jurisdiction* in the Virgin Islands.  Plaintiff offers no proof that Bridgestone directed any efforts specifically to the Virgin Islands, only the United States as a whole.  As noted in *D'Jamoos*, this is not enough:

> Pilatus's efforts to exploit a national market necessarily included Pennsylvania as

---

(in Ohio) and that it shipped tires directly to the United States in the wake of the Firestone ATX Recall.  (*See* Docs. 11-15, 11-16, 11-17, and 11-18)

[16] Plaintiff cites several unpublished tire defect cases finding general jurisdiction over Bridgestone based on its "substantial" contacts with the forum. *See, e.g., Dawson v. Bridgestone/Firestone Inc.*, Case No. 2001-250-CA, slip op. at 1 (Fl. County Ct. Dec. 27, 2001) ("Bridgestone's substantial and not isolated business activity in Florida subjects it to 'general' personal jurisdiction.").  As Plaintiff has failed to show that Bridgestone has substantial contacts with the Virgin Islands, these cases are inapposite.

a target, but those efforts simply do not constitute the type of deliberate contacts within Pennsylvania that could amount to purposeful availment of the privilege of conducting activities in that state. Rather, any connection of Pilatus to Pennsylvania merely was a derivative benefit of its successful attempt to exploit the United States as a national market.

*D'Jamoos*, 566 F.3d at 104; *see also In re Najawicz*, 52 V.I. at 337 ("It is essential . . . that there be some act by which the defendant purposely avails itself of the privilege of conducting activities *within the forum.*" (quoting *BP Chems. Ltd.*, 229 F.3d at 260) (emphasis added)); *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 48 V.I. 941, 946 (D.V.I. 2007) (finding allegation that defendant was "the world's largest supplier and distributor of gelcoats" insufficient to show that it "transacted business in the Virgin Islands").[17]

<u>Alter Ego Theory</u>

Plaintiff also argues that this Court may exercise general jurisdiction over Bridgestone based on its subsidiary's (BATO) contacts with this forum.  To succeed on this theory, Plaintiff would have to show that BATO is subject to general jurisdiction in this forum and that Bridgestone substantially controls and dominates BATO so "that the 'independence of the separate corporate entities was disregarded.'" *Unlimited Holdings, Inc. v. Bertram Yacht, Inc.*, 49

---

[17] To the extent that Plaintiff is suggesting that Bridgestone's contact with the United States combined with the (unproven) fact that Bridgestone tires are sold in the U.S. Virgin Islands is sufficient to confer general jurisdiction over Bridgestone, Plaintiff is misguided.  Such an argument (apparently accepted by the *Henry* court (*see Henry*, 2006 WL 1980622, at *6)) conflates specific and general jurisdiction and "essentially ask[s] [the Court] to find that the stream-of-commerce theory provides an independent source of personal jurisdiction over [Bridgestone], a source unrelated to [plaintiff's] claims."  *D'Jamoos*, 566 F.3d at 107.  However, to accept this argument would "impermissibly [] remove the 'arising from or related to' requirement from the specific jurisdiction test and unjustifiably would treat the stream-of-commerce theory as a source of general jurisdiction." *Id.; see also Goodyear*, 2011 WL 2518815, at *8 ("Flow of a manufacturer's products into the forum, we have explained, may bolster an affiliation germane to specific jurisdiction . . . But ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant.") (citations omitted).

V.I. 1002, (D.V.I. 2008) (citing *Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 76 (3d Cir. 2006));

*In re Tutu Wells Contamination Litig.*, 846 F. Supp. at 1261 ("There must be a showing . . . that

the parent exercised such dominion over finances, policies and practices that the controlled

corporation has, so to speak, no separate mind, will or existence of its own and is but a conduit

for its principal." (citation omitted)); *Dickson*, 559 F. Supp. at 1174 ("Whether the relationship

between the foreign corporation and its local affiliate is characterized as an 'alter ego' a 'mere

dependency' or a "general agency' . . . the key to determining a jurisdictional 'presence' lies in

the extent of control which the non-resident corporation is authorized to exert or does exert over

its in-state affiliate."); *see* Restatement (Second) of Conflict of Laws § 52, cmt. b (1971)

("Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial

jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as

in effect to disregard the latter's independent corporate existence.");[18] *see also Kehm Oil Co. v.

Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008) ("To obtain general jurisdiction over [the parent]

in [the forum] based on [the subsidiary's] contacts, [plaintiff] would need to show that [the

parent] controls [the subsidiary]." (citing *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir.

2008))); *Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805 (3d Cir. 1981) (imputing contacts of

subsidiary to parent for jurisdictional purposes depends on "whether the subsidiary corporation

played any part in the transactions at issue, whether the subsidiary was merely the alter ego or

agent of the parent, and whether the independence of the separate corporate entities was

disregarded").[19]

---

[18]  Virgin Island courts look to the Restatements for guidance "in the absence of local laws to the contrary."  *See* 1 V.I.C. § 4.

[19]  Bridgestone cites numerous cases where courts have rejected attempts to impute the contacts of Bridgestone's subsidiaries to Bridgestone for the purpose of asserting general jurisdiction. *See, e.g.*, *Campbell v. Bridgestone (USA), Inc.,* 2005 WL 3359372, at *4 (S.D. Tex. 2005)

"[T]he level of control necessary to substantiate an alter ego relationship must exceed the usual supervision that a parent exercises over a subsidiary." *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009) (citations omitted). "Plaintiffs must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010).[20]

First and foremost, Plaintiff has utterly failed to show that BATO has systematic and continuous contacts with this forum sufficient to subject it to general jurisdiction in the Virgin Islands. Thus, there are no contacts between BATO and this forum to impute to Bridgestone. *See Kehm Oil Co.*, 537 F.3d at 300. But, even if he had made such a showing, Plaintiff has still failed to show that it would be proper to impute BATO's contacts to Bridgestone for jurisdictional purposes.

---

(granting unopposed motion to dismiss) ("Bridgestone Corporation is not subject to this court's jurisdiction on the basis of the alleged acts of its subsidiary, Firestone. There is no indication that Bridgestone Corporation maintains the requisite control over Firestone to impute the jurisdictional contacts from the subsidiary to the parent."); *Keller Rigging & Constr. v. Bridgestone Corp.*, No. 3:02-0405, slip op. at 16 n.8 (M.D. Tenn. Oct. 9, 2003) (disagreeing with *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 2001 WL 34691976 (S.D. Ind. 2001), and holding that the exercise of general jurisdiction over Bridgestone by imputing its subsidiary's contacts was improper); *Lawhon v. Mitsubishi Motor Sales of Am., Inc.*, No. G-03-033, slip op. at 7 (S.D. Tex. July 14, 2003) (unopposed motion) (finding no general jurisdiction over Bridgestone); *Vazquez v. Bridgestone/Firestone N. Am. Tire, LLC, et al.*, No. 4:03-cv-00522-SWW, slip op. at 6 (E.D. Ark. Jul. 3, 2003) ("Here, plaintiffs have failed to present any evidence to warrant a finding that the two Bridgestone/Firestone subsidiaries are alter egos of Bridgestone for jurisdictional purposes. There is no evidence that the corporate form was abused to promote an injustice. The fact that Bridgestone shares the profits of its subsidiaries only shows a connection between the parent and its subsidiaries and fails to justify subjecting Bridgestone to an exercise of personal jurisdiction."); *Vamos v. Ford Motor Co.*, No. 01-003049-NP, slip op. at 4 (Mich. County Ct. March 11, 2002) (finding that Bridgestone does not carry on a "continuous and systematic part of its general business in the State of Michigan").

[20] Bridgestone claims that it has always maintained formal barriers between it and BATO and that it does not control BATO's daily operations nor control or participate in the marketing or sales decisions of BATO. (Hashiguchi Aff. ¶¶ 17-18)

### a. Bridgestone's Annual Reports

In support of this alter-ego theory of personal jurisdiction, Plaintiff offers Bridgestone's corporate statements that refer to Bridgestone and its subsidiaries as "we" and "our." For example, in its 1999 Annual Report, Bridgestone states:

> *Bridgestone* already is a tire-industry leader. Our goal, however, is to be more than "a" leader. We are determined to be "the" leader . . . . New plants have increased our responsiveness to local demand in the Americas . . . . We bolstered *our* North American presence by starting production of passenger car and light truck tires at *our* new, state-of-the-art plant in Aiken Country, South Carolina . . . . Since acquiring the Firestone organization in 1988, we have restored that proud name to preeminence in world tire markets. And *we* will continue working to position the Firestone brand and all our brands as industry leaders in their market segments.

(Doc. 11-20) (emphasis added by Plaintiff).  In that same report, Bridgestone states that "We are working to reduce non operating time 50% at our plants in the Americas," and refers to Ford and General Motors as "our customers" and "our dealers." (Doc. 11-21)

As argued by Bridgestone, however, this sort of generic language is frequently used by corporations when describing the activities of their subsidiaries and does not demonstrate that Bridgestone actually controlled BATO.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 929 (9th Cir. 2001) (noting that "consolidating the activities of a subsidiary into the parent's reports is a common business practice" and finding that parent was not alter ego of subsidiary for jurisdiction purposes);  *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (finding that statement in annual report by Nissan Japan's president that "I want each part of our global operations, and this includes Japan, to focus on contributing to the company as a whole" was insufficient to show "the pervasive control over the subsidiary" necessary to impute contacts to parents); *Nat'l Prod. Workers Union Trust v. CIGNA Corp.*, 2007 WL 1468555, at *7 (N.D. Ill. 2007) (statement in annual report by CEO that "[w]e now operate as a single company" in

reference to parent and subsidiary corporations was insufficient to show control by parent over subsidiary for jurisdictional purposes); *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 423-24 (E.D. Pa. 2005) ("[R]eferences in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship." (quoting *Unocal Corp.*, 248 F.3d at 928)); *Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 868 (N.D. Ill. 1998) ("we" and "our" in annual report did not overcome parent and subsidiary's separate identities such that subsidiary's forum contacts could be imputed to parent); *Akzona, Inc. v. E.I. Du Pont De Nemours and Co.*, 607 F. Supp. 227, 238 (D. Del. 1984)  (blurring corporate separateness in language of annual report, overlap of boards of directors, parental approval of large capital expenditures, and parental guaranty of third-party loans to subsidiary insufficient to establish alter ego relationship).

### b.  Bridgestone's Alleged Influence Over BATO

Plaintiff also offers evidence that Bridgestone exerts some influence over BATO's leadership structure.  For example, in the wake of the Firestone ATX Tire recall in 2000, Bridgestone selected a new CEO for Firestone.  *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 2001 WL 34691976, at *8 (S.D. Ind. 2001) ("Bridgestone asked [John] Lampe to consider assuming position of Firestone CEO"); *see also Bridgestone says it may replace Firestone management*, Bloomberg News, Sep. 12, 2000, Doc. 11-23 ("Bridgestone Chief Executive Yoichiro Kaizaki . . . said he's 'planning to change the whole structure ranging from management to crisis-management rules at Firestone.'"); Keith Bradsher, *Ford and Another Tire Maker Facing New S.U.V. Problems*, N.Y. Times, Sep. 18, 2000, Doc. 11-24 ("In another sign of the tire issues' spreading effects, Firestone parent, the Bridgestone Corporation of Japan, said that it would reshuffle Firestone's management . . . .").  Plaintiff has also provided evidence

that at least ten individuals have served on the board of directors for both Bridgestone and BATO.  (*See* Bridgestone/Firestone Inc., Supplemental Interrog. Resps, in MDL Litigation, Doc. 11-24)

Plaintiff has also tendered evidence showing that Bridgestone and BATO exchanged technology and personnel.  For example, Hideo Hara, an engineer at Bridgestone/Firestone, testified that engineers from Bridgestone and Bridgestone/Firestone communicated with each other somewhat regularly regarding tire design and specifications. (*See* Hara Dep. 111, 141-42, Doc. 11-26; *see also* McMillan Dep. 125, Doc. 11-27)[21]  There is also deposition testimony that Bridgestone sent engineers and other employees to BATO's plants in the United States including to conduct "audits" of BATO.  (Hara Dep. 128; McMillan Dep. 124-127, 152-156)

This evidence, while demonstrating significant *contact* between Bridgestone and BATO, does not support a finding that Bridgestone *controlled* BATO so as to disregard its independent corporate existence.  Indeed, in *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 2001 WL 34691976 (S.D. Ind. 2001), extensively relied on and cited by Plaintiff to support his personal jurisdiction claim, the district court found that this very "exchange of employees and overlap of high-level executives is not necessarily evidence that Bridgestone controls Firestone, and certainly is not enough, by itself, to support piercing the corporate veil." *Id.* at *8 (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)); *see also Unocal Corp.*, 248 F.3d at 927 ("Plaintiffs' evidence here establishes only that Total is an active parent corporation involved directly in decision-making about its subsidiaries' holdings. Because Total and its subsidiaries observe all of the corporate formalities necessary to maintain corporate separateness, the first prong of the alter ego test is not satisfied."); *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136

---

[21] According to Plaintiff, Harry McMillan was the manager of BATO's Decatur Illinois manufacturing plant.

F.3d 537, 540 (7th Cir. 1998) ("Parents of wholly owned subsidiaries necessarily control, direct, and supervise the subsidiaries to some extent, but unless there is a basis for piercing the corporate veil and thus attributing the subsidiaries' torts to the parent, the parent is not liable for those torts." (citations omitted)); *Hopper v. Ford Motor Co. Ltd.*, 837 F. Supp. 840, 844 (S.D. Tex. 1993) (finding facts that parent and subsidiary "coordinate and cooperate and regularly share financial and operating information . . . cannot support a prima facie showing of alter ego status between the Defendants.").[22]

Plaintiff's own evidence highlights the lack of Bridgestone's control over BATO.  In his deposition, Mr. Hara testified that BATO maintained control over its own manufacturing and sales: "As far as I understood, Bridgestone Japan had no authority to change the belt skim compound of Bridgestone/Firestone even if parent company and the child company, I believe operation is independent, and we, Bridgestone/Firestone, had authority to decide that. . . ." (Hara Dep. at 116); "Bridgestone/Firestone has authority to develop, produce, and sell Bridgestone brand in this country.  We do not need any approval from Bridgestone Japan to develop, manufacture, and sell Bridgestone brand. That's my understanding." (*Id.* at 151); "As far as we got approval from customer, we can develop and produce and sell the tire to American customers without any approval of Bridgestone Japan." (*Id.* at 152)    This testimony indicates that

---

[22] Cases cited by Plaintiff do not change the analysis. For example, in *Wesleyan Pension Fund, Inc. v. First Albany Corp.*, 964 F. Supp. 1255 (S.D. Ind. 1997), the court found that it could attribute the contacts of eight subsidiaries to the corporate parent because all eight subsidiaries and the parent had *identical* corporate addresses, telephone numbers, controlling shareholders, directors, and officers.  *Id.* at 1262.  Other cases cited by Plaintiff stand for the unremarkable proposition that specific jurisdiction over a principal is proper for torts committed by his or her agent in the forum and within the scope of the agency. *See, e.g.*, *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975) (Oklahoma's jurisdiction over defendant proper because plaintiff made *prima facie* showing that defendant sent his agent to Oklahoma to meet with plaintiffs where agent made fraudulent statements).  Here, Plaintiff has not shown that the subject tire was brought into the jurisdiction by an agent of Bridgestone.

Bridgestone did not have control over BATO's day-to-day activities and that BATO had unilateral control over the development, production, and sale of tires. Plaintiff has not made a *prima facie* case that Bridgestone disregarded BATO's independent corporate existence.[23] *See De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283 (1st Cir. 1999) (declining to apply alter ego theory of personal jurisdiction when "there is evidence that the decision-making and day-to-day operational functions were carried out by the [subsidiary] itself rather than [the parent]."); *see also Unlimited Holdings, Inc.*, 49 V.I. at 1013; *In re Tutu Wells Contamination Litig.*, 846 F. Supp. at 1261; c*f. Genesis Bio Pharm., Inc. v. Chiron Corp*., 27 Fed. App'x. 94, 98 (3d Cir. 2002) (finding that parent of wholly owned subsidiary was subject to personal jurisdiction based on contacts of subsidiary with forum because it "has ultimate decision making power with regard to all business decisions concerning [the subsidiary] (including the distribution of [the subject product])."). Accordingly, Plaintiff has failed to make a *prima facie* showing that the exercise of personal jurisdiction over Bridgestone would comport with due process.

### C.  Jurisdictional Discovery

In his opposition, Plaintiff requests jurisdictional discovery regarding "Bridgestone's connections to the subject tire . . . the role of the various Bridgestone and Firestone Defendants in the design, testing, marketing, manufacture, and sale of the subject tire [and] Bridgestone's business transactions within the U.S. Virgin Islands." (Pl.'s Opp. 17; *see also* Aff. of Vincent

---

[23] In *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670 (W.D. Tex. 2001), cited by Plaintiff, the court held that a claim of general jurisdiction over Bridgestone based on an alter ego theory was colorable. *Id.* at 679-80.  However, *Bellorin* involved an assertion of fraudulent joinder, and the court emphasized that for that purpose, "the Court must determine only whether Defendants have established that there *is no reasonable possibility* that a Texas court could find that it has personal jurisdiction over Bridgestone. When the question of personal jurisdiction is finally determined on its merits, it is possible that a Texas court would find that it is without personal jurisdiction over Bridgestone." *Id.* at 683 (emphasis added).  The question here is not the *possibility* of personal jurisdiction, but whether Plaintiff has made a *prima facie* case of personal jurisdiction.

Collianni, Doc. 11-28)  Bridgestone objects to this request on the grounds that Plaintiff has failed to demonstrate that "personal jurisdiction might exist."  (Def.'s Reply 14)

"Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir.1997)).  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id*. (internal quotations and citations omitted).

Plaintiff's claim of specific jurisdiction, while tenuous, is not "clearly frivolous."  It is possible that the subject tire ended up in the Virgin Islands through some Bridgestone affiliated distribution channel.  *See* note 14, supra.  If that were the case, specific jurisdiction would be plausible.  Discovery as to specific jurisdiction over Bridgestone will be limited to Bridgestone's distribution channels as they relate to the Virgin Islands as well as how the subject tire ended up in the Virgin Islands.

Plaintiff's general jurisdiction claim, on the other hand, is untenable.  Plaintiff has not plausibly alleged nor demonstrated the possibility that Bridgestone has *any* direct contacts with the Virgin Islands, let alone systematic and continuous contacts.  Likewise, Plaintiff has not plausibly alleged nor demonstrated the possibility that Bridgestone controls BATO, or that BATO itself is subject to general jurisdiction in this forum.  *See Toys "R" Us, Inc.*, 318 F.3d at 456-57.  The Court is not persuaded that further discovery on the parent/subsidiary issue is warranted.  Accordingly, discovery as to Plaintiff's general jurisdiction theory will not be

permitted.

### III.    Motion to Dismiss Plaintiff's Punitive Damages Claim

Bridgestone seeks dismissal of Plaintiff's punitive damages claim under Fed. R. Civ. P. 12(b)(6).  "Under Rule 12(b)(6), a motion to dismiss  may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, __F. 3d.__, 2011 WL 2321393, at *5 (3d Cir. June 14, 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).  Rule 12(b)(6) requires a plaintiff to plead facts sufficient to support a punitive damages claim.  *Thomas v. Rijos*,__F. Supp. 2d__, 2011 WL 1637471, at *3 (D.V.I. April 29, 2011) (Finch, J.).  To sustain a punitive damages claim in the Virgin Islands, a plaintiff must allege facts demonstrating that the defendant acted outrageously and with an evil motive or with a reckless indifference to the rights of others. *Id.* at *3 n.1 (citing *Acosta v. Hovensa, LLC*, 53 V.I. 762, 782 (D.V.I. 2010)); *see also* Restatement (Second) of Torts § 908(2) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.").

Here, the Complaint does not contain sufficient factual matter to sustain a claim of punitive damages.  The closest Plaintiff comes is his allegation that Bridgestone

> knew that the subject Potenza tire was defective [but] nonetheless acted in conscious disregard or with reckless indifference for the lives, safety and well-being of the driver of the vehicle and occupants, including Francis, for the purpose of increasing their profits, and further refused to take adequate measures to protect drivers and passengers by failing to provide available protection against a rollover event.

(Compl. ¶ 25)   The Court finds this allegation to be the sort of conclusory allegation that *Twombly* and its progeny instruct should be ignored.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1954 (2009) (finding allegation that former Attorney General Ashcroft "knew of, condoned, and

willfully and maliciously agreed to subject respondent to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" failed to plausibly allege civil rights violations) (internal quotations marks omitted).   Plaintiff's claim for punitive damages is dismissed without prejudice, however, so that Plaintiff may amend his Complaint to add a punitive damages claim if he can allege facts supporting his entitlement to them. [24]

### IV.   Conclusion

For the reasons stated above, it is hereby

   **ORDERED** that Bridgestone's Motion to Dismiss Plaintiff's complaint for lack of personal jurisdiction is **DEFERRED** pending the limited jurisdictional discovery allowed herein;

   **ORDERED** that Plaintiff shall be allowed **limited discovery** in the form of interrogatories, requests for admission, and document requests relating to his specific jurisdiction claim and whether Bridgestone derives profits from tires sold in the Virgin Islands. Such discovery shall be completed within ninety (90) days from the date of this order unless otherwise ordered by the Court.   At the end of the period allowed for discovery, Plaintiff must file a response to Bridgestone's Motion to Dismiss for Lack of Personal Jurisdiction demonstrating how specific jurisdiction is proper.   Bridgestone shall be allowed to file a reply brief within thirty

---

[24] Bridgestone also moves to dismiss Plaintiff's punitive damages claim on the grounds that it was improperly pleaded as a standalone cause of action.  *See Matos*, 2009 WL 2477516, at *7 ("[I]t is well-established law that a punitive damages claim cannot stand alone.") (citations omitted).  In his complaint, however, it is far from clear that Plaintiff pleaded punitive damages as a separate "count."   Although his punitive damages allegation is captioned "Punitive Damages" in bold letters—in the same style as his strict liability and negligence causes of action—the allegation merely sets out the factual basis for his alleged entitlement to punitive damages. (*See* Compl. ¶¶ 25-26)  In the cases cited by Bridgestone and unlike here, the claim for punitive damages was separately listed as a "count" in the complaint.  *See, e.g.*, *Illaraza*, 2010 U.S. Dist. LEXIS 56212, at *29 ("In Count VIII, Plaintiff asks for punitive damages. . . .").  As the Court must construe the Complaint in the light most favorable to Plaintiff, the Court finds that his punitive damages claim is not a separate cause of action.

days of Plaintiff's response;

      **ORDERED** that Bridgestone's Motion to Dismiss Plaintiff's punitive damages claims is

**GRANTED**.

**ENTERED:**

Dated: July 6, 2011                  _____/s/_____
                                            RAYMOND L. FINCH
                                            SENIOR U.S. DISTRICT JUDGE