IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| TROY FRANCIS | ) | |
| | ) | |
| Plaintiff | ) | Civil Case No. 2010/30 |
| | ) | |
| v. | ) | |
| | ) | |
| BRIDGESTONE CORPORATION; | ) | |
| BRIDGESTONE FIRESTONE NORTH AMERICAN | ) | |
| TIRE, LLC.; and BRIDGESTONE/FIRESTONE, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BRIDGESTONE AMERICAS TIRE OPERATION L.L.C.'S MOTION TO STAY, OR ALTERNATIVELY, MOTION TO DISMISS**

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Bridgestone Firestone North American Tire, LLC, and Defendant Bridgestone/Firestone, Inc.'s (hereinafter "BATO") Motion for Stay, or Alternatively, Motion to Dismiss.[1] BATO seeks a stay under the *Colorado River* abstention doctrine. In the alternative, BATO seeks dismissal of Plaintiff's complaint on the grounds that he has failed to properly state a claim for relief. For the reasons discussed below, the Court grants in part and denies in part BATO's motions.

**I.   Background**

On February 9, 2008, Plaintiff Troy Francis was operating his 2005 Mitsubishi Lancer automobile equipped with a Bridgestone Potenza tire on the Melvin Evans Highway in St. Croix,

---

[1] These entities are now known as Bridgestone Americas Tire Operation L.L.C. or "BATO".

1

Virgin Islands. (Compl. ¶ 7, Doc. 1)[2] The tread on the Potenza tire (the "subject tire") separated causing Plaintiff's vehicle to leave the road and overturn. (*Id.*) Plaintiff suffered severe and permanent injuries during the accident, including brain injury, multiple fractures and lacerations, and disfigurement. (*Id.* at ¶¶ 7-8) On April 28, 2010, Plaintiff filed this strict liability and negligence action against Defendants Bridgestone Corporation, ("Bridgestone") and BATO alleging that they negligently manufactured, engineered, designed, marketed, tested or failed to test, inspected, distributed, and sold the subject tire. (*Id.* at ¶¶ 11-23)

On February 5, 2009, fourteen months before filing this action, Plaintiff filed a complaint in the Superior Court of the Virgin Islands for injuries he sustained in the February 9, 2008 car crash. The complaint contained causes of action for negligence, strict liability, wantonness, and breach of implied warranty. Plaintiff named Bridgestone Corp., BATO, and Emerald K Tires (the local tire shop that allegedly sold him the subject tire) as defendants. In the Superior Court case, Bridgestone has filed a motion to dismiss based on a lack of personal jurisdiction and the parties have begun discovery, including interrogatories, document requests, and the scheduling of depositions.

## II. *Colorado River* Abstention

BATO first moves for a stay under the prudential abstention doctrine announced by the Supreme Court in *Colorado River Water Conservation District. v. United States*, 424 U.S. 800 (1976). "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 172 (3d Cir. 1999) (citing *Univ. of Md. v. Peat*

---

[2] Unless otherwise noted, all ECF references are to Civ. Case No 10-cv-00030.

*Marwick Main & Co.*, 923 F.2d 265, 275-76 (3d Cir. 1991)); *see also Marshall v. Lauriault*, 372 F.3d 175, 183 (3d Cir. 2004) ("[W]hen a judgment sought is strictly in personam, both state and federal courts with concurrent jurisdiction may proceed until judgment is obtained in one of them" (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 465-66 (1939)).

The Supreme Court, however, has elucidated several narrow exceptions to this rule, including the *Colorado River* doctrine. "The *Colorado River* doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding. [citation]. The doctrine is to be narrowly applied in light of the general principle that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). Abstention under *Colorado River* is only appropriate when an action presents "extraordinary circumstances." *Id.*; *see Planned Parenthood v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) ("Abstention is an 'extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it' and one which should be invoked 'only in the exceptional circumstances.'" (quoting *Colo. River*, 424 U.S. at 813)).

Application of the *Colorado River* doctrine consists of two stages. First, the Court must determine whether the proceedings are parallel. *Nationwide*, 571 F.3d at 307. If they are parallel, the Court then applies a six factor test which requires an examination of:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Id.* at 308 (citing *Spring City*, 193 F.3d at 171).

"No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* (quoting *Colo. River*, 424 U.S. at 818-19). "The balancing of factors is 'heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).

### A. Parallelism

"Under *Colorado River*, the threshold question is whether a parallel state proceeding raises 'substantially identical claims [and] nearly identical allegations and issues.'" *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 136 n.3 (3d Cir. 2009) (quoting *Yang v. Tsui*, 416 F.3d 199, 204 n.5 (3d Cir. 2005)). Here, Plaintiff's two actions arise out of the same car crash and allege that it was caused by the same defective tire. Both actions include negligence and product liability claims against Bridgestone and BATO. *See Barron v. Caterpillar, Inc.*, WL 368335, at *2-3 (E.D. Pa. 1996) (finding parallelism for *Colorado River* purposes because "[b]oth cases present the same legal issue: whether [defendant] negligently designed and manufactured the [front end loader] and whether this negligence caused the injuries sustained by [plaintiff]"). The addition of wantonness and breach of implied warranty causes of action in the Superior Court action does not vitiate the substantial similarity between the two actions. *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510-11 (E.D. Pa. 2002) ("The cases need not be identical, however, there must be a likelihood that the state litigation will dispose of all the claims presented in the federal case."). Neither does the addition of Emerald K Tires as a defendant in the Superior Court action. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 306 (3d Cir. 2006) ("We have never required complete identity of parties for abstention.");

4

*Perry v. Manor Care, Inc.*, 2006 WL 1997480, at *3 (E.D. Pa. 2006) ("[F]ederal and state cases are sufficiently parallel if all of the parties in the federal case are also parties in the state case, even if the state case involves additional parties."); *see also Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997) (rejecting argument that cases were not parallel based on presence of third-party defendants in state proceeding). Accordingly, the Court finds that the cases are parallel.

### B. *Colorado River* Abstention Factors

The Court now turns to the *Colorado River* abstention factors. The factors relevant here are the desirability of avoiding piecemeal litigation, the order in which jurisdiction was obtained, and whether federal or state law controls. *Nationwide*, 571 F.3d at 308.[3]

#### i. Avoiding Piecemeal Litigation

While abstention under *Colorado River* involves a balancing of *all* the factors, the Third Circuit has consistently held that the "desirability of avoiding piecemeal litigation" is the most important factor. *Ryan*, 115 F.3d at 197 ("The *Cone* Court emphasized that the most important-indeed 'paramount'-factor justifying abstention in *Colorado River* was the McCarran Amendment and its policy against piecemeal litigation." (citing *Moses H. Cone*, 460 U.S. at 16)); *Nationwide*, 571 F.3d at 308 ("[T]he desirability of avoiding piecemeal litigation, was '[b]y far the most important factor' in the *Colorado River* decision itself." (quoting *Moses H. Cone*, 460 U.S. at 16)).

BATO argues that this factor "weighs heavily" in favor of abstention because litigation efforts and judicial resources will be duplicated if both cases are allowed to proceed. (BATO's Mot. For Stay 8-9) As argued by Plaintiff, however, the "avoidance of piecemeal litigation factor is met . . . only when there is evidence of a strong federal policy that all claims should be

---

[3] BATO concedes that the first, second, and sixth factors are "inapplicable" to the facts of this case. (*See* BATO's Mot. For Stay 8 n.2, Doc. 4)

5

tried in the state courts." *Ryan*, 115 F.3d at 197-98 (citing *Ky. W. Va. Gas Co. v. Pa. Pub. Util. Comm'n*, 791 F.2d 1111, 1118 (3d Cir. 1986)); *Spring City Corp.*, 193 F.3d at 172 ("A 'strongly articulated congressional policy against piecemeal litigation' is required to justify a stay." (quoting *Ryan*, 115 F.3d at 198)); *Nationwide*, 571 F.3d at 308 ("By definition, it is an inquiry into whether avoiding piecemeal litigation is a priority contemplated by the statute, regulation, or other authority at issue." (citing *Spring City Corp.*, 193 F.3d at 172)). In other words, the avoiding piecemeal litigation factor is not met simply by the possibility (or even probability) that, absent a stay, this Court and the Superior Court will conduct overlapping proceedings; rather, there must also be some policy fairly attributable to federal law counseling that Plaintiff's claims *ought* to be handled in the local courts.[4]

Here, BATO identifies no federal policy in favor of litigating Plaintiff's product liability claims in the Superior Court. *See Ryan*, 115 F.3d at 198 ("The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy

---

[4] Citing the unpublished decision, *BIL Management Corp. v. N.J. Econ. Dev. Auth.*, 310 Fed. App'x 490 (3d Cir. 2008), BATO argues that this factor can be satisfied without showing a "strongly articulated congressional policy against piecemeal litigation." Indeed in *BIL Management*, the Third Circuit affirmed the issuance of a stay under *Colorado River* while acknowledging that "there is no 'strongly articulated congressional policy against piecemeal litigation' relevant to this particular case." *Id.* at 492. The Court finds *BIL Management* unpersuasive for two reasons. First, it is an unpublished case and thus is not binding on this court. *See United States v. DeRewal*, 10 F.3d 100, 102 (3d Cir. 1993) ("We traditionally do not regard our unpublished decisions as having precedential value."); 3rd Cir. LAR, App. I, IOP 5.7 ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.").
Second, and perhaps more importantly, *BIL Management* plainly contradicts binding (and published) Third Circuit precedent. *See Spring City Corp.*, 193 F.3d at 172 (A "strongly articulated congressional policy against piecemeal litigation *is required* to justify a stay." (citations omitted and emphasis added)); *see also Ryan*, 115 F.3d at 197-98 (The "avoidance of piecemeal litigation factor is met . . . *only* when there is evidence of a strong federal policy that all claims should be tried in the state courts.") (emphasis added). BATO's reliance on *Chiampi v. Bally's Park Place, Inc.*, 2007 WL 465469 (D.N.J. 2007) is unpersuasive for the same reasons.

6

to consolidate multiple lawsuits for unified resolution in the state courts."). Indeed, courts applying the *Colorado River* doctrine in other product liability cases have found no such policy. *See Finch v. Thomas Asphalt Paving Co.*, 252 F. Supp. 2d 459, 463 (N.D. Ohio 2002) (in product liability case, finding "no clear federal policy in this case that requires the federal court to abstain"); *Peerless Heater Co. v. Chevron Chem. Co.*, 1998 WL 195706, at *3 (E.D. Pa. 1998) (finding that possibility of parallel state and federal litigation in case alleging defective manufacturing and breach of warranty claims did not satisfy avoidance of piecemeal litigation factor); *Allstate Ins. Co. v. Hechinger Co.*, 982 F. Supp. 1169, 1175-76 (E.D. Va. 1997) ("[N]one of the traditional abstention factors announced in *Colorado River* is present here. There is no federal constitutional issue, there are no difficult questions of state law (this is a straightforward negligence/product-liability action), and there are no pending state criminal proceedings."); *Dobzeniecki v. Stone & Webster Eng'g Corp.*, 716 F. Supp. 87, 91 (E.D.N.Y. 1989) ("Here, plaintiff's strict products liability, breach of warranty, and negligence claims present no novel or unique issues of state law. Thus, the fact that this action will be determined by settled principles of New York law fails to shift the balance in favor of abstention."). Because BATO identifies no federal policy against deciding Plaintiff's claims in this forum, this factor does not weigh in favor of abstention.

### ii. The Order In Which Jurisdiction Was Obtained

BATO maintains that this factor weighs in favor of abstention because Plaintiff's Superior Court action was filed fourteen months before this case and because litigation in the Superior Court case has proceeded further. Specifically, BATO claims that "answers, affirmative defenses, and dispositive motions have been filed in the Superior Court action . . . four sets of discovery have been exchanged between the parties, and subpoenas on third parties

7

have been served and responded to." (*See* BATO's Mot. For Stay 9) Plaintiff, on the other hand, claims that no discovery has been exchanged with Bridgestone Corp. (because of a pending motion to dismiss for lack of jurisdiction) and that the "majority of [written discovery] has yet to be served and answered." (Pl.'s Opp. 10, Doc. 10) The Court notes that dispositive motions, including this one and one filed by Bridgestone Corp. on personal jurisdiction grounds, have also been filed in this case.

The Superior Court case is fourteen months older than this case. But, as noted by both parties, this factor does not depend solely on the dates the cases were filed, but also the "the comparative progress" of the two cases. *Nationwide*, 571 F.3d at 309 (citing *Moses H. Cone*, 460 U.S. at 22). While discovery has arguably proceeded further in the Superior Court case than it has here, the Court does not believe that this slight relative progress tips this factor significantly in favor of abstention. *See Dobzeniecki*, 716 F. Supp. at 91 ("Where, as here, both actions have not progressed beyond the noticing of discovery demands, this factor is insignificant except to continue the weighted balance in favor of maintaining jurisdiction." (citing *Zemsky v. City of New York*, 821 F.2d 148, 153 (2d Cir. 1987))). Notably, the Superior Court has not addressed any of the pending dispositive motions. This Court has.[5] *Cf. BIL Management Corp.*, 310 Fed. App'x at 492 (finding that this factor weighed in favor of abstention because local court had already ruled on pre-discovery motion for summary judgment). Accordingly, the Court concludes that this factor weighs only slightly in favor of abstention.[6]

---

[5] *See* Mem. Op. and Order Re: Defendant Bridgestone Corp.'s Mot. to Dismiss for Lack of Personal Jurisdiction, Doc. 14.

[6] Without specifying any particular facts on the record, BATO argues that allowing Plaintiff's federal case to proceed would encourage forum shopping. This argument, however, can be made whenever there are parallel federal and state cases. And as BATO points to no specific facts that *Plaintiff* is engaging in forum shopping, this argument carries little merit. Furthermore, the cases cited by BATO on this score are inapposite. In *Morgan Stanley Dean Witter Reynolds, Inc. v.*

8

          iii.    Whether Federal or State Law Controls

The final *Colorado River* factor argued by BATO is that local law controls Plaintiff's claims. This is true. Plaintiff's product liability and negligence claims arise under the law of the Virgin Islands. The question then is whether this counsels in favor of abstention under *Colorado River*. Third Circuit precedent suggests that it does not:

> [W]hile the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law . . . . Although it is possible that some case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate, traditional negligence law does not fit that description. It is an area, rather, in which federal courts are called upon routinely to predict state law. Were we to consider the "state law issue" factor to be met in this case, it would be applicable in many more instances than the "rare circumstances" required by the Supreme Court in *Cone*.

*Ryan*, 115 F.3d at 199-200.

This Court has dealt extensively with Virgin Islands product liability and negligence law.

---

*Gekas*, 309 F. Supp. 2d 652 (M.D. Pa. 2004), the court found that Morgan Stanley may have been "forum shopping" when it filed an action to compel arbitration in federal court after *it* had been sued by Gekas in state court. *Id.* at 658. *Gekas* sought abstention of the federal action under *Colorado River* so that the state court could adjudicate the arbitration issue. The district court agreed finding that the *Colorado River* factors weighed strongly in favor of abstention and that *Morgan Stanley* may have filed a "reactive" lawsuit. *Id.* Here, of course, *Plaintiff* filed both actions and BATO identifies nothing "reactive" about the federal suit. The other case relied on by BATO, *Se. Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 826 F. Supp. 1506 (E.D. Pa. 1993), is equally unavailing. There the district court noted that "[w]hile forum shopping may be a ground to consider under *Colorado Review*, [sic] 'there is no doctrine of abstention or deference that authorizes a federal court to decline to exercise jurisdiction on the ground of forum shopping alone.'" *Id.* at 1516 n.8 (quoting 17A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 4247, at 9 (Supp. 1992)). The court went on to deny abstention under *Colorado River*, finding that considerations of forum shopping had no bearing on the abstention issue. *Id.* BATO also argues that allowing the two cases to proceed would "endorse a collateral estoppel problem" but does not elaborate sufficiently on this argument for the Court to consider it. In any event, the specter of collateral estoppel is generally not a reason to grant a stay under *Colorado River*. *See Spring City Corp.*, 193 F.3d at 172 ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." (citation omitted)).

9

*See, e.g.*, *Bodley v. Foster Wheeler Energy Corp.*, 2011 WL 1576673 (D.V.I. April 26, 2011) (allegations of defective refinery equipment); *L'Henri, Inc v. Vulcan Materials Co.*, 2010 WL 924259 (D.V.I. 2010) (commercial dry-cleaning chemicals); *Anders v. Puerto Rican Cars, Inc.*, 2009 WL 3007367 (D.V.I. 2009) (automobile brake systems); *Matos v. Nextran, Inc.*, 2009 WL 2477516 (D.V.I. 2009) (commercial truck). The Court finds that Plaintiff's claims are garden variety and that the legal issues presented by this case are not the sort of "rare circumstance" that justifies abstention under *Colorado River*. *Ryan*, 115 F.3d at 200; *see also Finch*, 252 F. Supp. 2d at 464 ("[T]he existence of a products liability claim, although governed by state law, does not overcome the heavy burden of the federal court to exercise its jurisdiction."); *Allstate Ins. Co*, 982 F. Supp. at 1175-76 (declining to abstain under *Colorado River* in part because "there are no difficult questions of state law (this is a straightforward negligence/product-liability action)"; *Dobzeniecki*, 716 F. Supp. at 91 ("Here, plaintiff's strict products liability, breach of warranty, and negligence claims present no novel or unique issues of state law. Thus, the fact that this action will be determined by settled principles of New York law fails to shift the balance in favor of abstention."). Accordingly, this factor does not support abstention.

### C. Conclusion

Weighing the three factors urged by BATO, the Court finds that abstention under *Colorado River* is not warranted; BATO identifies no federal policy counseling that Plaintiff's claims be heard solely in local court; there has been little relative progress in the Superior Court action; and Plaintiff's product liability and negligence claims do not implicate territorial interests sufficient to overcome the heavy presumption in favor of jurisdiction. Accordingly, BATO's motion for a stay under Colorado River is denied.

### III.     Motion to Dismiss

Alternatively, BATO moves for dismissal under Fed. R. Civ. P. 12(b)(6) on the grounds that Plaintiff has failed to state claims for strict liability, negligence, and punitive damages.

#### A.  Standard of Review

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6):

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Thomas v. Rijos*, __F. Supp. 2d__, 2011 WL 1637471, at *2 (D.V.I. April 29, 2011) (Finch, J.) (citing *Acosta v. Hovensa, LLC*, 53 V.I. 762, 770 (D.V.I. 2010)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).

"A district court may grant the motion to dismiss only if, accepting all factual allegations as true and construing the complaint in the light most favorable to plaintiff, it determines that plaintiff is not entitled to relief under any reasonable reading of the complaint." *Thomas*, 2011 WL 1637471 at *2 (quoting *Acosta*, 53 V.I. at 770). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 531 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1950 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1949).

### B. Analysis

#### i. Plaintiff's Strict Liability Claim

To state a cause of action for strict products liability in the Virgin Islands, a plaintiff must allege "(1) the existence of a defect, (2) in an unreasonable dangerous condition, (3) which proximately causes the injury." *Bodley,* 2011 WL 1576673, at *2 (citing *Matos,* 2009 WL 2477516, at *6); *see also Murray v. Fairbanks Morse*, 610 F.2d 149, 154 (3d Cir. 1979) (same); Restatement (Second) of Torts § 402A (1965).

As relevant here, Plaintiff's complaint alleges:

> On February 9, 2008, Troy Francis was operating a 2005 Mitsubishi Lancer vehicle (VIN JA3AJ66F854027817) with a Bridgestone Potenza tire on Melvin H. Evans Highway in St. Croix, U.S. Virgin Islands. Francis lost control of the vehicle when the tread separated on the Potenza tire and caused him to leave the roadway and overturn. Francis suffered severe and permanent injuries during the accident. At the time of the occurrence, the Potenza tire was in substantially the same condition as it was when manufactured and sold by Bridgestone, except for normal wear and tear.
>
> . . . .
>
> The tire, when sold by Bridgestone, was not merchantable and reasonably suited to the use intended, and its condition, when sold, was a proximate cause of the injuries sustained by Francis. Bridgestone, by marketing and advertising the tires, represented that the subject tire was safe for its intended use. At the time of the aforesaid design, manufacture, assembly, sale or distribution of the subject Potenza tire and at the time of the occurrence made the basis of this lawsuit, the tire was defective and unreasonably dangerous when used in an ordinary intended and foreseeable manner by Plaintiff, who was a foreseeable user. More particularly, the tire was defective in that it suffered a tread separation while being used in an ordinary intended and foreseeable manner and lacked proper warnings regarding said issue. The Potenza tire left Bridgestone's control in the same condition as it was at the time and place of the incident that is the basis of this action, with the exception of ordinary wear and tear. The defective and unreasonably dangerous condition of the subject Potenza tire was a proximate cause of the injuries sustained by Francis.

(Compl, ¶¶ 7-8, 11-16)

BATO argues that Plaintiff has failed to allege the actual defect in the tire that caused his

car to veer off the road and crash. To survive a motion to dismiss on sufficiency grounds in a product liability case, a plaintiff must plead facts "plausibly show[ing] that the equipment at issue . . . was defective." *Bodley*, 2011 WL 1576673, at *4 (citing *Iqbal*, 129 S.Ct. at 1950). Plaintiff has accomplished this by stating that the tread on the subject tire separated when used in its normal manner and that "[a]t the time of the occurrence, the Potenza tire was in substantially the same condition as it was when manufactured and sold by Bridgestone, except for normal wear and tear." (*See* Compl. ¶¶ 8, 14) For the purposes of this *motion to dismiss*, the Court can reasonably infer from these allegations that the tread on the subject tire separated because of a defect. *Capogrosso*, 588 F.3d at 184 (holding that court must make reasonable inferences in plaintiffs' favor on a motion to dismiss).[7]

Furthermore, Plaintiff's allegation that "the tire was defective in that it suffered a tread separation" (Compl. ¶ 14) sufficiently identifies the defect at issue—the tire tread. At this stage of the proceedings, further specificity is not required.[8] *See Bausch v. Stryker Corp*., 630 F.3d

---

[7] Attacking the "plausibility" of Plaintiff's defect assertion, BATO argues that it is "common knowledge that tires can fail, by tread separation or blowout, for a myriad of reasons, including overloading, under-inflation, punctures, improper repairs, impact damages, road hazards, cuts, improper tire rotation, misalignment, and other service vehicle conditions." (BATO's Mot. For Stay 14) Plaintiff, however, has alleged that the subject tire was being used in its "ordinary intended and foreseeable manner" and that it was "in substantially the same condition as it was when manufactured and sold by Bridgestone, except for normal wear and tear" at the time of the accident. (Compl. ¶¶ 8, 14) These allegations, which the Court must accept as true for the purposes of this motion, rule out non-defect related causes of the accident and nudge his claim over the line from "speculative" to "plausible." *Cf. Bodley*, 2011 WL 1576673, at *4 (granting motion to dismiss because "the facts asserted merely show the possibility that the overflow was a result of the defect in the wasteheat equipment. It may be just as likely, under the facts pled, that human error caused the accident."); *Thomas*, 2011 WL 1637471, at *2 (granting motion to dismiss because allegation in complaint while "sufficient to state a claim for negligence and perhaps *consistent* with a claim for gross negligence, is not enough to nudge his claim over the line into gross negligence.").

[8] Citing *Anders v. Puerto Rican Cars, Inc.*, 2009 WL 3007367 (D.V.I. 2009) *aff'd* 409 Fed. App'x 539 (3d Cir. 2011), BATO argues that "in order to bring this claim in good faith, Plaintiff should have already secured the opinion of a forensic tire expert for the purpose of indentifying

13

546, 559 (7th Cir. 2010) (finding that plaintiff was not required to "specify the precise defect" in order to state a claim for strict product liability); *Matos*, 2009 WL 2477516, at *6 (finding that under § 402A, defect sufficiently stated where plaintiff contended that the "truck was defectively designed, manufactured and/or assembled including, but not limited to, defective design of the chassis or frames and/or installation of the barrel/drum that made control of the truck impossible"); *Butcher v. DaimlerChrysler Co., LLC*, 2008 WL 2953472, at *3 (M.D.N.C. 2008) (allegations of "excessive vibration" at speeds above 40 miles per hour in new truck (without indentifying specific part causing the vibration) sufficiently stated defect claim); *Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *8 (N.D. Cal. 2007) (Allegations that "Turanza and Potenza run-flat tires wore out in many cases in less 10,000 miles and that they required more frequent replacement than with normal, non-defective tires" properly stated claim for breach of implied warranty.) Accordingly, Plaintiff has properly stated a claim for product liability against BATO.[9]

### ii. Plaintiff's Negligence Claim

"To state a claim for negligence in the Virgin Islands, a plaintiff must allege (1) a duty;

---

specific defects, if any, in the subject tire." (BATO's Mot. For Stay at 14) *Anders*, however, does not support this contention. There, the Court held that "*proving* the existence of a defect in a product requires testimony from a qualified expert" and granted Toyota *summary judgment* on plaintiff's strict liability claim because the plaintiff had failed to tender relevant or reliable expert testimony that plaintiff's accident was caused by any defect in the car that was present when Toyota first sold the car. *Id.* at *8-9 (emphasis added); *see also Anders*, 409 Fed. App'x at 542-543 ("[I]n most jurisdictions, including the Virgin Islands, a plaintiff is required to supply expert testimony in order to survive *summary judgment* on a design defect claim. . . .") (emphasis added).
    Nowhere in either *Anders* opinion does the district or circuit court imply that a plaintiff need obtain an expert to identify the specific defect prior to filing a product liability suit and the Court declines to adopt such a rule.
[9] Plaintiff also properly alleges that the defective tire proximately caused the accident and his injuries. (*See* Compl. ¶ 7 ("Francis lost control of the vehicle when the tread separated on the Potenza tire and caused him to leave the roadway and overturn."))

14

(2) a breach of that duty; (3) causation; and (4) damages." *Matos*, 2009 WL 2477516, at *6 (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 571 (D.V.I. 2004) and *Nickeo v. Atl. Tele-Network Co.*, 45 V.I. 149, 160 (V.I. Terr. Ct. 2003)); *see also* Restatement (Second) of Torts § 281 (1965) (stating the elements of negligence).

> In support of his negligence claim, Plaintiff alleges that:
>
> At the time Bridgestone manufactured, designed, engineered, tested or failed to test, marketed, inspected, distributed, and sold the Potenza tire involved in the occurrence made the basis of this complaint, Bridgestone had a duty to exercise reasonable care in order to provide a safe product, and to manufacture, design, engineer, test, market, inspect, and distribute the product so as not to subject the occupants of the vehicle to an unreasonable risk of injury, harm or death.
>
> . . . .
>
> Bridgestone negligently manufactured, engineered, designed, marketed, tested or failed to test, inspected, distributed, and sold the subject product in such a manner that the product was operationally defective and unreasonably dangerous. That negligent conduct was a proximate cause of the severe and permanent injuries suffered by Francis.

(Compl. ¶¶ 22-23)

BATO argues that these allegations are "boilerplate buzz words" that fail to provide it with notice of what it actually did or failed to do. BATO also contends that the Complaint fails to explain how these acts proximately caused the tire tread separation. (BATO's Mot. For Stay 15-16) The Court finds BATO's arguments unpersuasive.

Essentially, Plaintiff alleges that BATO had a duty not to manufacture, design, engineer, test, market, inspect and/or distribute a tire that would catastrophically malfunction when used for its normal purposes, BATO violated this duty by manufacturing, designing, engineering, testing, marketing, inspecting and/or distributing the subject tire, and that BATO's violation of this duty lead to the subject tire's blow out and his subsequent injuries. (Compl. ¶¶ 22-23) These allegations support each element of Plaintiff's negligence cause of action and are thus

15

sufficient to state a claim for negligence. *See Matos*, 2009 WL 2477516, at *6 (finding allegations that defendants failed to properly inspect a truck that they "designed, manufactured, assembled and/or sold" to plaintiff's employer which resulted in physical injuries to plaintiff when truck rolled over properly stated negligence claim).[10]

### iii. Punitive Damages

BATO also moves to dismiss Plaintiff's punitive damages claim on the basis that Plaintiff has failed to allege sufficient facts to support his punitive damages claim. Rule 12(b)(6) requires a plaintiff to plead facts sufficient to support a punitive damages claim. *Thomas*, 2011 WL 1637471, at *3. To sustain a punitive damages claim in the Virgin Islands, a plaintiff must allege facts demonstrating that the defendant acted outrageously and with an evil motive or with a reckless indifference to the rights of others. *Id.* at *3 n.1 (citing *Acosta*, 53 V.I. at 782); *see also* Restatement (Second) of Torts § 908(2) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.").

Here, the Complaint does not contain sufficient factual matter to sustain an entitlement to punitive damages. The closest Plaintiff comes is his allegation that BATO "knew that the subject Potenza tire was defective [but] nonetheless acted in conscious disregard or with reckless indifference for the lives, safety and well-being of the driver of the vehicle and occupants, including Francis, for the purpose of increasing their profits, and further refused to take adequate

---

[10] Cases cited by BATO in support of its negligence argument do not pertain to negligence and are inapposite. *See Illaraza v. Hovensa, L.L.C.*, 2010 WL 2342424, at *4 (D.V.I. 2010) (dismissing defamation claim because plaintiff had not alleged factual details about who defamed him, to whom the alleged defamatory remark was published, or when the defamatory remark was made); *Cromwell v. Int'l Union*, 2009 WL 2477510, at *3 (D.V.I. 2009) (finding complaint stating that "[The Union] failed and refused to take Plaintiff's grievance to Arbitration . . . [The Union] has breached its fiduciary obligations to Plaintiff" failed to contain sufficient factual allegations to state claim for breach of fiduciary duty against union).

measures to protect drivers and passengers by failing to provide available protection against a rollover event." (Compl. ¶ 25) The Court finds this allegation to be the sort of conclusory allegation that *Twombly* and its progeny instruct should be ignored. *See Iqbal*, 129 S. Ct. at 1954 (finding allegation that former Attorney General Ashcroft "knew of, condoned, and willfully and maliciously agreed to subject respondent to harsh conditions of confinement as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" failed to plausibly allege civil rights violations (internal quotationsomitted)). Plaintiff's claim for punitive damages is dismissed without prejudice, however, so that Plaintiff may amend his Complaint to add a punitive damages claim if he can allege facts supporting his entitlement to them.[11]

## IV. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that BATO's Motion for Stay, or Alternatively, Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**;

**ORDERED** that BATO's Motion for Stay is **DENIED**;

**ORDERED** that BATO's Motion to Dismiss is **GRANTED IN PART**; Plaintiff's punitive damages claim is dismissed without prejudice; BATO's Motion to Dismiss is **DENIED**

---

[11] BATO also moves to dismiss Plaintiff's punitive damages claim on the grounds that it was improperly pleaded as a standalone cause of action. *See Matos*, 2009 WL 2477516, at *7 ("[I]t is well-established law that a punitive damages claim cannot stand alone." (citations omitted)). In his complaint, however, it is far from clear that Plaintiff pleaded punitive damages as a separate "count." Although his punitive damages allegation is captioned "Punitive Damages" in bold letters—in the same style as his strict liability and negligence causes of action—the allegation merely sets out the factual basis for his alleged entitlement to punitive damages. (*See* Complaint at ¶¶ 25-26) In the cases cited by Bridgestone, and unlike here, the claim for punitive damages was separately listed as a "count" in the complaint. *See, e.g.*, *Illaraza*, 2010 U.S. Dist. LEXIS 56212, at *29 ("In Count VIII, Plaintiff asks for punitive damages. . . ."). As the Court must construe the Complaint in the light most favorable to Plaintiff, the Court finds that his punitive damages claim is not a separate cause of action.

in all other respects.

                                            **ENTERED:**

Dated: July 11, 2011                      _____/s/_____
                                                       RAYMOND L. FINCH
                                                       SENIOR U.S. DISTRICT JUDGE