## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| ——————————————————— ) | | |
| **TROY FRANCIS,** ) | | |
| ) | | |
| **Plaintiff,** ) | | |
| ) | | |
| v. ) | | **Civil Action No. 2010-030** |
| ) | | |
| **BRIDGESTONE CORPORATION;** ) | | |
| **BRIDGESTONE FIRESTONE** ) | | |
| **NORTH AMERICAN TIRE, LLC; and** ) | | |
| **BRIDGESTONE/FIRESTONE, INC.,** ) | | |
| ) | | |
| **Defendants.** ) | | |
| ——————————————————— ) | | |

**Attorneys:**
**Kenneth Rick Alvis, Esq.,**
Birmingham, AL
**Vincent A. Colianni, II, Esq.,**
St. Croix, U.S.V.I.
        *For the Plaintiff*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
**Joseph C. Weinstein, Esq.**
Cleveland, OH
        *For the Defendant Bridgestone Corporation*

**Colin Paul Smith**
Chicago, IL
**Marc R. Brosseau**
Greenwood Village, CO
**Lee P. Teichner, Esq.**
Miami, FL
**Stacy L. White, Esq.**
St. Croix, U.S.V.I.
        *For the Defendants Bridgestone Firestone North American Tire, LLC and*
        *Bridgestone/Firestone Inc.*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on several motions—a Motion to Dismiss, a Motion for Summary Judgment, a Motion to Transfer, and an alternative Motion for Additional Jurisdictional Discovery—that involve the questions whether this Court has personal jurisdiction over Defendant Bridgestone Corporation and whether this action should be transferred to another jurisdiction.[1]   Upon consideration of these motions and their corresponding briefs, and for the reasons discussed below, the Court will grant Plaintiff's "Alternative Motion to Allow Jurisdictional Discovery" (Dkt. No. 35) with respect to the exercise of general jurisdiction over Bridgestone Corporation in Florida, and deny without prejudice the remaining motions.

### I. BACKGROUND

Plaintiff Troy Francis filed a Complaint on April 28, 2010 in this strict liability and negligence action.  (Compl., Dkt. No. 1).[2]  The Complaint alleges that Defendants are liable for injuries that Plaintiff sustained in a car accident on St. Croix, Virgin Islands.  (Compl. ¶¶ 7–23).  According to the Complaint, Plaintiff was driving his 2005 Mitsubishi Lancer automobile—equipped with a Bridgestone Potenza tire—on the Melvin Evans Highway on St. Croix on

---

[1] There are several motions and briefs that involve the personal jurisdiction issues in this case. These motions are:  "Defendant Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted" (Dkt. No. 7); "Plaintiff's Motion for Transfer" (Dkt. No. 29); Plaintiff's "Alternative Motion to Allow Jurisdictional Discovery" (Dkt. No. 35); and Defendant "Bridgestone Corporation's Motion for Summary Judgment" (Dkt. No. 68).  The Court previously discussed the personal jurisdiction issues in this case in its Memorandum Opinion and Order issued on July 6, 2011, in which the Court granted Plaintiff limited discovery on whether personal jurisdiction exists over Defendants in the Virgin Islands.  (*See* Dkt. No. 14 at 26).

[2] All ECF docket number references are to Civil Case No. 1:10-cv-030, unless otherwise specified.

February 9, 2008.  (*Id.* at ¶ 7).  Plaintiff lost control of the vehicle when the tread on the Potenza tire (the "subject tire") allegedly separated, causing the vehicle to leave the road and overturn. (*Id.*).  As a result, Plaintiff alleges that he "suffered severe and permanent injuries during the accident," including:  fractures of the neck, ribs and forearm; brain injury; lacerations; and disfigurement.  (*Id.* at ¶ 7, 9).  Plaintiff brings two causes of action—strict liability and negligence—alleging that Defendants negligently manufactured, engineered, designed, marketed, tested or failed to test, inspected, distributed, and sold the subject tire.  (*Id.* at ¶¶ 10–23).

Defendant Bridgestone Corporation ("Bridgestone") is a Japanese corporation with its principal place of business in Tokyo, Japan.[3]  In its "Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted" (Dkt. No. 7), Bridgestone challenged the Court's personal jurisdiction over it.  Bridgestone argued that it does not do business in the Virgin Islands, and that it does not have contacts with the Virgin Islands that would allow the Court to exercise personal jurisdiction.  (Dkt. No. 7 at 1).  On July 6, 2011, the Court issued a Memorandum Opinion and Order (Dkt. No. 14), which addressed Bridgestone's Motion to Dismiss.  The Court noted that while Plaintiff's claim of specific

---

[3] Plaintiff originally named three Defendants in his Complaint:  (1) Bridgestone; (2) Bridgestone Firestone North American Tire, LLC, a Delaware corporation with its principal place of business in Duluth, Georgia; and (3) Bridgestone/Firestone, Inc., an Ohio corporation with its principal place of business in Akron, Ohio.  (*Id.* at ¶¶ 1–3).  In a separate Memorandum Opinion and Order issued on September 11, 2013, the Court granted summary judgment in favor of Defendants Bridgestone Firestone North American Tire, LLC and Bridgestone/Firestone, Inc. (including their successor corporation, Bridgestone Americas Tire Operations, LLC ("BATO")). (Dkt. Nos. 88, 89).  Therefore, Bridgestone Corporation is the only remaining Defendant in this matter.

jurisdiction was "tenuous," it was not "clearly frivolous," reasoning that it was "possible that the subject tire ended up in the Virgin Islands through some Bridgestone affiliated distribution channel." (*Id.* at 34). Accordingly, the Court granted Plaintiff ninety days to conduct limited discovery relating to his specific jurisdiction claim and whether Bridgestone derives profits from tires sold in the Virgin Islands. (*Id.* at 18).

On October 4, 2011, after conducting the limited jurisdictional discovery, Plaintiff filed a Motion to Transfer the action to the U.S. District Court for the Southern District of Florida. (Dkt. No. 25 at 1). Plaintiff conceded that his efforts "have *not* produced the kind of evidence that this Court has ruled in its 7/6/11 order is necessary to impact the jurisdictional analysis." (*Id.*) (emphasis in original). Therefore, assuming *arguendo* that Bridgestone is not subject to personal jurisdiction in St. Croix, Plaintiff "alternatively submits that the proper remedy upon such a finding would be to transfer this entire action to the Southern District of Florida instead of dismissing Bridgestone Corporation as a party defendant." (*Id.* at 1–2). Plaintiff subsequently filed an alternative motion to permit him to conduct additional jurisdictional discovery to support his Motion to Transfer. (Dkt. No. 35). Thus, Plaintiff requests that the Court: (1) find *in personam* jurisdiction over Bridgestone in the Virgin Islands; (2) in the alternative, transfer the entire action to the U.S. District Court for the Southern District of Florida; or (3) in the alternative, allow Plaintiff to conduct jurisdictional discovery on Bridgestone Corporation's general contacts with the state of Florida. (*Id.* at 6).

## II. DISCUSSION

**A.     Personal Jurisdiction in the Virgin Islands**

Defendant Bridgestone Corporation objects to this Court's exercise of personal jurisdiction over it in the Virgin Islands. (*See* Dkt. Nos. 7, 9, 12, 32, 36, 68, 80). Therefore, Plaintiff bears the burden of establishing personal jurisdiction over Bridgestone. *See D'Jamoos ex rel. Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

Here, Plaintiff explicitly "concedes that there is insufficient evidence to show that Bridgestone Corp. has sufficient contacts with the Virgin Islands" to confer personal jurisdiction. (Dkt. No. 78 at 1–2). Thus, Plaintiff has failed to carry his burden of establishing that this Court has personal jurisdiction over Bridgestone. *See GasPlus, L.L.C. v. U.S. Dept. of Interior*, 466 F. Supp. 2d 43, 47 (D.D.C. 2006) ("GasPlus concedes that, at the present time, it lacks sufficient information to assert facts upon which this Court could base personal jurisdiction over Mr. Baracker. . . . Accordingly, the Court will dismiss without prejudice all claims against Mr. Baracker for lack of personal jurisdiction").

However, Plaintiff requests that instead of dismissing the case, the Court should instead "exercise its discretion to transfer it to a district where Bridgestone Corp. is subject to personal jurisdiction." (Dkt. No. 78 at 2 (citing *Trujillo v. Williams*, 465 F.3d 1210, 1222–23 (10th Cir. 2006)). Plaintiff notes that "[i]f the Court dismisses on personal jurisdiction grounds, Francis will not be able to refile because the limitations period has expired." (*Id.*). Therefore, Plaintiff specifically requests that the Court transfer the case to the U.S. District Court for the Southern District of Florida. (*Id.*).

**B.      Statutory Authority to Transfer the Case**

Plaintiff argues that transfer is appropriate under one or more of three statutory transfer provisions:  28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a), or 28 U.S.C. § 1631.  (*Id.*; *see also* Mot. to Transfer, Dkt. No. 25 at 2).  The applicability of transfer under each statutory provision is examined in turn.

Section 1404 provides for change of venue.  In relevant part, § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  "Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007).  Given that personal jurisdiction has not been established over Bridgestone in the Virgin Islands in this case, and that transfers for convenience under § 1404(a) "presuppose that the court has jurisdiction," § 1404(a) is not an appropriate transfer provision for the case at bar.  *See id.* at 76– 78.

Turning to § 1406, it provides that if a case is filed "laying venue in the wrong division or district," then the district court of that district shall either dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  "Section 1406(a) comes into play where plaintiffs file suit in an improper forum." *Lafferty*, 495 F.3d at 77.

However, § 1406 has been interpreted broadly.  The Supreme Court has held that § 1406(a) authorizes transfer even when the transferor court lacks personal jurisdiction over the

6

defendant. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not."); *Lafferty*, 495 F.3d at 82 n.13 ("*Goldlawr* clarified that courts may use § 1406(a) to transfer cases involving defendants over whom they lack personal jurisdiction."). Indeed, some courts have interpreted the breadth of § 1406 so as to permit transfer—even in cases like this—where venue is proper but personal jurisdiction is lacking. *See Ross v. Colo. Outward Bound Sch., Inc.*, 822 F.2d 1524, 1527 (10th Cir. 1987) ("Although read closely, the language of § 1406(a) appears to apply only to those cases transferred for lack of proper venue, the statute has been construed in an extraordinarily broad manner; courts have held that actions commenced in a district court where venue is proper but where personal jurisdiction is lacking may be transferred to a proper forum.").[4] Thus, if § 1406 were to be afforded such a broad reading, it would be an appropriate statutory basis for a transfer in the instant matter.

Finally, under § 1631, when a federal "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ."

---

[4] In relevant part, the venue statute provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). "[T]he test . . . is not the defendant's contacts' with a particular district, but rather the location of those events or omissions giving rise to the claim." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012) (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)) (internal quotation marks omitted). Given that the car accident—and alleged tire malfunction—giving rise to Plaintiff's claims occurred on St. Croix, "a substantial part of the events or omissions giving rise to the claim" occurred in this judicial district. (*See* Compl. ¶ 7). Therefore, venue is proper here.

28 U.S.C.A. § 1631.  The Third Circuit has applied § 1631 to situations—as here—where the transferor court lacked personal jurisdiction.  *See, e.g.*, *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (citing § 1631 as authority for the proposition that "[t]he Puerto Rico District Court had authority, if it found that it lacked *in personam* jurisdiction, to transfer plaintiffs' first action to the District Court of the Virgin Islands").  Thus § 1631 provides an appropriate basis upon which to effectuate a transfer if the statutory requirements are met.

The § 1631 statutory requirements are two-fold:  (1) that the action "could have been brought" in the transferee court; and (2) that such transfer is "in the interest of justice."[5] Therefore, the Court will proceed to examine whether these requirements are met in this case.

**1.      Whether Transfer to Florida is "in the Interest of Justice"**

The requirement that a transfer be "in the interest of justice"—is an equitable determination.  "District courts have broad discretion in evaluating convenience and whether the transfer is in the interest of justice." *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 600 (S.D.N.Y. 2009) (evaluating 28 U.S.C. § 1404(a)).  In making this decision, courts weigh the equities of dismissal versus transfer.  *See Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009) (citing *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996)).

Here, Bridgestone argues that transfer is not in the interest of justice because Plaintiff was aware—"[f]or nearly a year before filing his lawsuit"—"that the subject tire was intended for sale outside the North American market (primarily Europe), and that Bridgestone did not

---

[5] Assuming the applicability of § 1406(a) as described above, that statute imposes the same two requirements.  Nothing in § 1406(a) or § 1631 suggests that the meaning of the requirements varies between the two statutes.  Nor have the parties pointed the Court to any case which suggests that the "could have been brought" or "in the interest of justice" tests are different under § 1406(a) and § 1631.

distribute or ship the subject tire to the North American market." (Dkt. No. 32 at 13–14). Bridgestone also argues that a transfer would force it to litigate identical claims in two separate forums, because Plaintiff "is asserting identical claims against Bridgestone and BATO in the Superior Court Action" in the Virgin Islands. (*Id.* at 14).

In response, Plaintiff argues that he is not intending to pursue duplicative litigation or "get 'two bites' at the apple," but instead "only wants his claims preserved in the Superior Court pending final resolution in the federal system." (Dkt. No. 35 at 11). Plaintiff maintains that it is logical to stay one action pending the outcome of the other, which would result in no prejudice to Defendant. (*Id.*). Plaintiff also argues that transfer is preferable to dismissal, because he would be time-barred from refiling due to the expiration of the limitations period. (*See* Dkt. No. 78 at 2). Thus, according to Plaintiff, "it would be against the interests of justice to deny transfer and allow Plaintiff's claims to expire on non-substantive grounds." (Dkt. No. 35 at 10). In Plaintiff's view, he "was injured in the Virgin Islands by a tire that he purchased in the Virgin Islands," and thus he filed suit in the Virgin Islands. (*See* Dkt. No. 37 at 2). Plaintiff argues that he "has been seriously injured by a defective tire, and he is using any and all procedures available under federal law to allow him to present his substantive claims to a jury in a constitutionally proper forum." (*Id.*). He asserts that "[d]espite Bridgestone Corporation's characterizations, there is nothing untoward about that." (*Id.*).

The Court agrees with Plaintiff that Defendant would not be prejudiced by a transfer of the federal action from the Virgin Islands to Florida. Further, the Court finds no bad faith by Plaintiff, given that he originally filed suit in the jurisdiction where the subject tire was purchased and the alleged injury occurred, and given that he now seeks transfer to a state where

9

he believes jurisdiction is proper.  Having considered the arguments of the parties and having weighed the equities of dismissal versus transfer, the Court concludes that, if the U.S. District Court for the Southern District of Florida could exercise personal jurisdiction over Bridgestone, a transfer to that court would be "in the interest of justice."  *See* 28 U.S.C. § 1631; *see also* 28 U.S.C. § 1406(a); *Ruiz*, 552 F.3d at 276.  Accordingly, the Court turns to the remaining prong of the transfer inquiry—whether the action "could have been brought" in the transferee court.  *See* 28 U.S.C. § 1631; *see also* 28 U.S.C. § 1406(a).

> **2.     Whether the Action "Could Have Been Brought" in Florida**

To meet the requirement that the case "could have been brought" in Florida, Plaintiff must make a prima facie showing that Florida could exercise personal jurisdiction over Bridgestone.  *See D'Jamoos*, 566 F.3d at 109; *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists:  the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Both prongs of this inquiry must be satisfied in order to establish personal jurisdiction over a nonresident defendant.  *See Borden v. East-European Ins. Co.*, 921 So. 2d 587, 592 (Fla. 2006) ("First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the [state] statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process

requirements.") (quoting *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989));
*see also Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012).

Turning to the first prong, the Court must determine—under Florida law—whether a
district court in Florida could exercise personal jurisdiction over Bridgestone pursuant to
Florida's long-arm statute.  *See D'Jamoos*, 566 F.3d at 107 (applying Colorado law to determine
whether a federal district court in Pennsylvania erred in denying plaintiffs' motion to transfer the
action to a federal district court in Colorado); *Mazer*, 556 F.3d at 1274 ("The reach of the
[Florida long-arm] statute is a question of Florida law.  [F]ederal courts are required to construe
[such law] as would the Florida Supreme Court.  Absent some indication that the Florida
Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of
[Florida's] intermediate courts.") (quoting *Meier*, 288 F.3d at 1271); *Marten v. Godwin*, 499
F.3d 290, 293, 296 (3d Cir. 2007) (applying Pennsylvania law to affirm the dismissal of the
plaintiff's claims by the U.S. District Court for the Eastern District of Pennsylvania for lack of
personal jurisdiction); *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434,
436 (3d Cir. 1987) ("A federal district court may assert personal jurisdiction over a nonresident
of the state in which the court sits to the extent authorized by the law of that state.").

Plaintiff argues that general jurisdiction exists over Bridgestone in Florida pursuant to the
Florida appellate court's ruling in *Bridgestone/Firestone, Inc. v. Herron*, 528 So. 2d 414 (Fla.
Dist. Ct. App. 2002), and that on the basis of the *Herron* decision, Bridgestone is collaterally
estopped from relitigating whether it is subject to personal jurisdiction in Florida.  (*See* Dkt. No.
25 at 3; Dkt. No. 35 at 1–8).

In *Herron*, the plaintiffs brought a products liability claim on behalf of their minor daughter against multiple defendants, including Bridgestone Corporation. *Herron*, 528 So. 2d at 415. Plaintiffs alleged that a tire on the family's Jeep Cherokee separated, causing the vehicle to roll over several times and leaving their daughter paralyzed due to catastrophic injuries. *Id.* The tire that allegedly caused the rollover was a Firestone Wilderness AT tire, which was manufactured by Bridgestone/Firestone, Inc., a wholly-owned subsidiary of Bridgestone Corporation. *Id.* The tire was allegedly purchased from a Firestone dealer in Florida. *Id.* The trial court denied Bridgestone's motion to dismiss for lack of personal jurisdiction on two grounds, determining that: (1) Bridgestone had subjected itself to specific jurisdiction under the Florida long-arm statute by the commission of specific acts apart from those of its subsidiary— namely, by mishandling a recall of the Firestone Wilderness AT tires at issue in the case; and (2) Bridgestone had engaged in substantial business activities of its own in Florida, subjecting it to the general jurisdiction of Florida courts under the Florida long-arm statute's general provision. *Id.* at 416. Bridgestone appealed the denial of its motion to dismiss, continuing to object to personal jurisdiction. *Id.* at 415–16, 419.

The Florida appellate court rejected Bridgestone's appeal as meritless. *Id.* at 415. In its decision, the appellate court in *Herron* noted that: Bridgestone produces tires for sale in the United States; tires labeled with the Bridgestone name are distributed by Bridgestone/Firestone, Inc., and then sold to consumers in Florida and other states; Bridgestone advertises its tires on billboards in Florida, and its name is used in numerous retail tire stores throughout the state; and Bridgestone produces a line of sporting goods sold to consumers in Florida. *Id.* at 416. The court further noted that the Firestone Wilderness AT tire at issue in the case was subject to a

recall.  *Id.*  "Although Firestone Wilderness AT tires were made by Bridgestone/Firestone, Inc.,

the Bridgestone Corporation supervised the recall of those tires."  *Id.*  The court continued:

> It is apparent from the record that Bridgestone derives millions of dollars in revenue from the sale of its products in Florida. Nevertheless, Bridgestone insists that it is not subject to the jurisdiction of the Florida courts. The company continues to advance this argument, even though it has been rejected many times before by other courts in Florida and in other states. As shown by the affidavits filed in the trial court, there are at least ten other cases in which the courts have held that Bridgestone Corporation is subject to state court jurisdiction for injuries caused by defective tires.
>
> Bridgestone's appeal to this court is plainly without merit and could not be sustained under any interpretation of the law.

*Id.*  For those reasons, the *Herron* court concluded that the trial court correctly determined that

Bridgestone was subject to both specific jurisdiction and general jurisdiction in Florida, under

the relevant provisions of the Florida long-arm statute.  *Id.*

Here, the parties dispute the preclusive effect of the *Herron* opinion:  Plaintiff maintains

that Bridgestone is collaterally estopped from relitigating the issue of its general jurisdiction in

Florida (Dkt. No. 35 at 1–8, Dkt. No. 37 at 1–7), whereas Bridgestone claims that Plaintiff's

reliance on *Herron* is misplaced for several reasons, including that Florida's mutuality doctrine

precludes the application of collateral estoppel.  (Dkt. No. 32 at 11–12, Dkt. No. 36 at 4–6).[6]

---

[6] "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'"  *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.'" *Id.* at 892 n.5.  Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Id.* at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  "Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  *Id.* (quoting *New Hampshire*, 532 U.S. at 748–49).  Here, Plaintiff's argument focuses on "collateral estoppel" or "issue preclusion."

"[F]ederal courts [are required] to give a prior state judgment the same conclusive effects as would the courts of that state" and "a federal court must look to state law to determine the scope of the estoppel." *Spartacus Youth League v. Bd. of Trustees of Illinois Indus. Univ.*, 502 F. Supp. 789, 796 (N.D. Ill. 1980); *see also Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1331 (11th Cir. 2010) ("Under the Full Faith and Credit Act, 28 U.S.C. § 1738, a federal court must give preclusive effect to a state court judgment to the same extent as would courts of the state in which the judgment was entered. . . .  That means the [prior state court] findings must be given the same preclusive effect in this federal court case that they would be given if the case were in state court.  Florida preclusion law controls."); *Paramount Aviation Corp. v. Agusta*, 178 F. 3d 132, 145 (3d Cir. 1999) (following "the general federal rule that the preclusive effects of prior cases are determined by the law of the prior forum").  Therefore, the Court looks to Florida law on issue preclusion, or collateral estoppel, to determine the preclusive effect of the *Herron* decision.[7]

---

[7] *See* U.S. Const. Art. IV, § 1; 28 U.S.C. § 1738 ("The records and judicial proceedings of any court of any such State, Territory or Possession [of the United States] . . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 385 (1985) ("[W]e have parallel systems of state and federal courts, and the concerns of comity reflected in § 1738 generally allow States to determine the preclusive scope of their own courts' judgments."); *Allen v. McCurry*, 449 U.S. 90, 95 (1980)  ("The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts."); *Czarniecki v. City of Chicago*, 633 F.3d 545, 549 n.3 (7th Cir. 2011) ("We apply state res judicata principles when the earlier action in question was decided in state court."); *Peloro v. United States*, 488 F.3d 163, 175 n.11 (3d Cir. 2007) ("We follow the federal rule that the law of the issuing court . . . determines the preclusive effects of a prior judgment.") (quotation marks and citation omitted); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Under the Constitution's Full Faith and Credit Clause, *see* U.S. Const. Art. IV, § 1, federal courts must accord state court judgments the same preclusive effect as other courts within that state.").

In Florida, issue preclusion is called collateral estoppel. "Collateral estoppel, also known as estoppel by judgment, serves as a bar to relitigation of an issue which has already been determined by a valid judgment." *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995). Florida courts require that there be a strict mutuality of parties in order for the doctrine of collateral estoppel to apply. *See id.*; *see also E.C. v. Katz*, 731 So. 2d 1268, 1270 n.1 (Fla. 1999) (per curiam).[8] "Thus, unless both parties are bound by the prior judgment, neither may use it in a subsequent action." *Stogniew*, 656 So. 2d at 919; *see also Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) ("The doctrine of collateral estoppel bars identical parties from relitigating only those issues that have previously been decided between them.").

Here, Plaintiff was not a party to the *Herron* litigation. Therefore, under Florida law, the doctrine of collateral estoppel does not apply to the *Herron* court's determination that general jurisdiction existed over Bridgestone. *See id.* Having determined that the *Herron* court's determination is not binding on this issue, the Court must independently determine, under Florida law, whether personal jurisdiction exists over Bridgestone.[9]

---

[8] There is one limited exception to the general rule, which is inapplicable here. "The only case in which [the Florida Supreme] Court has not strictly adhered to the requirement of mutuality of parties is *Zeidwig*[ *v. Ward*, 548 So. 2d 209 (1989)]." *Stogniew*, 656 So. 2d at 919. "*Zeidwig* constituted a narrow exception in which collateral estoppel was permitted in a defensive context and then only under the compelling facts of that case." *Id.* "*Zeidwig* is limited to ineffective assistance of counsel claims and subsequent legal malpractice claims." *Jones v. Upjohn Co.*, 661 So. 2d 356, 358 (Fla. Dist. Ct. App. 1995). In a subsequent case, the Florida Supreme Court explained that, "[t]wo things are clear pursuant to a fair reading of *Stogniew*: (1) the requirement of mutuality of parties is a general rule that applies to its defensive use; and (2) the sole exception to this rule carved out in attorney malpractice suits following resolution of ineffective assistance of counsel claims is to be read as narrowly as possible—this Court could not have made its limitation of *Zeidwig* any greater." *E.C. v. Katz*, 731 So. 2d at 1270.

[9] In so doing, the Court will consider the *Herron* court's decision, but only to the extent it is appropriate to do so under governing law. For example, the Court is mindful that in construing

Plaintiff argues that general jurisdiction exists over Bridgestone in Florida.  (*See, e.g.*, Dkt. No. 25 at 3; Dkt. No. 35 at 8, 13; Dkt. No. 37 at 5).  Section 48.193(2) grants Florida courts general jurisdiction over defendants who engage in "substantial and not isolated activity" within Florida.[10]   There need not be any connection between the defendant's activities and the plaintiff's claim, and the claim does not need to arise from activity in Florida.  *See Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. Dist. Ct. App. 1999); *Trustees of Columbia Univ. v. Ocean World, S.A.*, 12 So. 3d 788, 792 (Fla. Dist. Ct. App. 2009).  A plaintiff asserting that a Florida court has general jurisdiction over a defendant must show "continuous and systematic general business contacts" between the defendant and the state of Florida.  *Ocean World*, 12 So. 3d at 792.

"Florida cases have found 'continuous systematic business contacts' to confer general jurisdiction where a nonresident defendant's activities are extensive and pervasive, in that a significant portion of the defendant's business operations or revenue derived from established commercial relationships in the state."  *Ocean World*, 12 So. 3d at 793.  "Such contacts have also been found where the defendant continuously solicits and procures substantial sales in Florida."  *Id.*  In *Woods*, for example, a Florida appellate court found general jurisdiction over a defendant which derived "great pecuniary benefit from its transactions" in Florida, sold eighteen percent of

---

the Florida long-arm statute, it is bound by the decisions of Florida's intermediate courts, unless there is some indication that the Florida Supreme Court would decide otherwise.  *Mazer*, 556 F.3d at 1274.

[10] Section 48.193(2) provides that "a defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

its product to Florida importers, moved nearly all of its product through the state, purchased equipment and supplies from Florida suppliers, utilized Florida storage facilities, and established essential business relationships in the state. *See Woods*, 739 So. 2d at 620–21.

In contrast, a Florida appellate court agreed with defendant seat-belt manufacturers that the *de minimis* sales of their products in Florida did not confer general jurisdiction over them. *See TRW Vehicle Safety Sys., Inc. v. Santiso*, 980 So. 2d 1149, 1153 (Fla. Dist. Ct. App. 2008). In so holding, the appellate court noted that the defendants' sales volume in Florida amounted to less than 0.3% of their total annual sales volume. *See id.* An affidavit on the record established that the defendants did not design, manufacture, or assemble their seat belts in Florida, and the defendants were "not registered to do business in Florida" and had "no offices, places of business, real estate, or facilities in Florida as well as no officers, employees, or sales agents." *Id.* at 1150. Likewise, in a 2012 case involving a Cayman Islands tour company, a Florida appellate court found that a defendant lacked systematic and continuous contacts with Florida because the defendant did not "maintain any offices or employees in Florida, own any assets or real estate in Florida, or directly sell any of its services in Florida." *E & H Cruises, Ltd. v. Baker*, 88 So. 3d 291, 294 (Fla. Dist. Ct. App. 2012).

The presence of a subsidiary in Florida, without more, is not sufficient to confer general jurisdiction over a non-Florida corporate parent. *Enic, PLC v. F.F. S. & Co., Inc.*, 870 So. 2d 888, 891 (Fla. Dist. Ct. App. 2004). However, under agency law principles, general jurisdiction over the parent can be established if the parent exercises sufficient control over its Florida subsidiary. *See id.* Such control is "sufficient" to establish jurisdiction when "the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes

17

of the dominant corporation." *Id.* (internal quotation marks omitted) (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. Dist. Ct. App. 1988)).

"The reach of [the Florida long-arm statute] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). Thus, to make a determination with respect to general jurisdiction under Florida's long-arm statute, a court need only determine whether the exercise of jurisdiction over a defendant by a court in Florida would exceed constitutional bounds. *See id.*; *Schwartzberg v. Knobloch*, 98 So. 3d 173, 178 (Fla. Dist. Ct. App. 2012) ("[I]f the defendant's activities meet the requirements of [Fla. Stat. § 48.193(2)], the due process requirement of minimum contacts is fulfilled.") (quotation marks and citation omitted); *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 252 (Fla. Dist. Ct. App. 2011) ("Because substantial, continuous, and systematic business contacts is the standard for both subsection (2) of Florida's long-arm statute and the due process requirement for general jurisdiction, a finding of substantial, continuous, and systematic business contacts will satisfy both the long-arm statute and the due process requirements of *Helicopteros*.") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 410 (1984)); *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1128 (Fla. Dist. Ct. App. 1994) ("The Florida courts have harmonized the language of section 48.193(2) with the constitutional due process requirements enunciated in *Helicopteros* by holding that substantial and not isolated activity means 'continuous and systematic general business contacts' as articulated in *Helicopteros*.").

The Supreme Court has stated that for a corporation, the "paradigm forum for the exercise of general jurisdiction" is a place where "the corporation is fairly regarded as at home."

18

*Goodyear*, 131 S. Ct. at 2853–54.  "The exercise of personal jurisdiction comports with due process if the non-resident defendant has established 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Oldfield v. Pueblo de Bahia Lora*, *S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros*, 466 U.S. at 414).

Under Supreme Court precedent, general jurisdiction can be established in accordance with due process when the plaintiff makes a showing of "substantial, continuous, and systematic business contacts" between the defendant and the forum state.  *See Caiazzo*, 73 So. 3d at 252 ("[B]etween *International Shoe*, *Perkins*, and *Helicopteros*, a showing of substantial, continuous, and systematic business contacts must be made to support general jurisdiction.").  As long as the defendant's contacts with the forum are "continuous and systematic," those contacts need not be related to the plaintiff's cause of action.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009).

Here, in response to Plaintiff's Motion to Transfer, Bridgestone has submitted a Supplemental Affidavit of Yuichi Hashiguchi—a manager in Bridgestone's Legal Department—stating that Bridgestone does not do, and has not done, business in Florida.  (Dkt. No. 68-2 at 1). The Supplemental Affidavit contains the following averments, among others:  (a) Bridgestone is headquartered, and maintains its principal place of business, in Tokyo, Japan; (b) Bridgestone does not sell tires in Florida or anywhere else in the United States; (c) Bridgestone is not licensed to do business in Florida, does not maintain a registered agent—and has not authorized anyone to act as its agent—for service of process in Florida; and (d) Bridgestone does not operate, conduct, engage in, carry on, or transact business of any kind in Florida.  (*Id.*).

19

Further, Mr. Hashiguchi states in the supplemental affidavit that "to [his] best knowledge, after a thorough investigation": (1) Bridgestone maintains no offices, places of business, post office boxes, or telephone listings in Florida and has never done so; (2) Bridgestone has no real estate, bank accounts, or other interest in property in Florida; (3) Bridgestone has not incurred any obligation to pay, and has not paid, any taxes in Florida; (4) Bridgestone has no agents or sales representatives in Florida; (5) Bridgestone has no employees in Florida; (6) Bridgestone has not designed, manufactured, sold, delivered, or issued warranties on any good or product in Florida, nor has it participated in the decision to sell or deliver any good or product to Florida; (7) Bridgestone has not conducted a recall or replacement program of any kind in Florida; (8) at no time relevant to this lawsuit has Bridgestone entered into a contract in Florida or committed any tort, in whole or in part, in Florida; and (9) to the extent that Bridgestone-brand tires are sold in retail outlets in Florida, none of those outlets are owned or operated by Bridgestone, and Bridgestone is not involved in such sales. (*Id.*).

Given that Bridgestone has filed an affidavit challenging personal jurisdiction over it in Florida, the burden has shifted back to Plaintiff to prove the basis for personal jurisdiction. *See Meier*, 288 F.3d at 1269 (noting that when the defendant submits affidavits challenging personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction"); *Two Worlds United v. Zylstra*, 46 So. 3d 1175, 1777 (Fla. Dist. Ct. App. 2010) ("Once a nonresident defendant files an affidavit contesting the allegations contained within a complaint concerning personal jurisdiction, . . . the burden shifts to the plaintiff to prove by affidavit the basis for personal jurisdiction.") (citing *Venetian Salami*, 554 So. 2d at 502).

20

Here, Plaintiff points the Court to the *Herron* case, arguing that regardless of the decision's preclusive effect, "the honor and respect due to the judges of the Florida Court of Appeals, at the very least, compels a strong evidentiary inference from which this Court can hold that there is indeed the requisite contacts between Bridgestone Corporation and the State of Florida for general personal jurisdiction to be had there." (Dkt. No. 37 at 3). Plaintiff further asserts that "Bridgestone Corporation boasts of having a 20 percent market share of the tire market in North America," and notes that "Florida has the fourth biggest economy in North America and the twentieth biggest economy in the world." (*Id.*). However, the Court finds that Plaintiff's reliance on the *Herron* case, together with his general assertions regarding Bridgestone's contacts with the United States—including through its subsidiary, Bridgestone Americas Tire Operations, LLC ("BATO")—provides an insufficient basis to satisfy Plaintiff's burden of establishing personal jurisdiction over Bridgestone. *See, e.g.*, *Venetian Salami*, 554 So. 2d at 502.

**C.    Whether Additional Jurisdictional Discovery is Appropriate**

Alternatively, Plaintiff requests additional jurisdictional discovery. (*See* Dkt. No. 35 at 11; Dkt. No. 37 at 3–4). Specifically, Plaintiff asks the Court to "continue the motion to transfer to allow Plaintiff to conduct discovery on Bridgestone Corporation's business contacts with the State of Florida." (Dkt. No. 35 at 11).

Courts should grant such a request unless the claim of personal jurisdiction is "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly

21

frivolous.'") (citation omitted).  "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Id.* (citation omitted) (quoting *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, given the *Herron* court's holding that both specific and general jurisdiction existed over Bridgestone Corporation in Florida in that case, and given Plaintiff's assertions regarding Bridgestone's contacts with Florida, the Court does not consider Plaintiff's claim for general jurisdiction over Bridgestone in Florida to be "clearly frivolous."  *See Toys "R" Us*, 318 F.3d at 456.  Plaintiff argues that "Bridgestone Corporation boasts of having a 20 percent market share of the tire market in North America," and notes that "Florida has the fourth biggest economy in North America and the twentieth biggest economy in the world."  (Dkt. No. 37 at 3).  Plaintiff also cites the *Herron* opinion for evidence of "a multitude of independent actions by Bridgestone Corporation that showed that it purposefully availed itself of the Florida market," including by advertising its tires on billboards in Florida.  (Dkt. No. 35 at 5–6).  In light of these assertions, the Court finds that Plaintiff has presented factual allegations that suggest "with reasonable particularity" the *possible* existence of the requisite contacts between Bridgestone and Florida. *See Toys "R" Us*, 318 F.3d at 456.  Therefore, additional jurisdictional discovery is justified, and the Court will allow Plaintiff to conduct such discovery in order to determine whether Bridgestone is subject to general jurisdiction in the state of Florida.[11]

---

[11] Plaintiff explains that he "was injured in the Virgin Islands by a tire that he purchased in the Virgin Islands," and when it became clear that the Court might not agree that the Virgin Islands

## III.  CONCLUSION

Plaintiff has conceded that there is insufficient evidence to show that Defendant Bridgestone Corporation has sufficient contacts with the Virgin Islands to confer personal jurisdiction over it.  Accordingly, the Court concludes that personal jurisdiction over Bridgestone in the Virgin Islands is lacking in this case.

Currently, there is insufficient evidence in the record to determine whether general jurisdiction exists over Bridgestone in Florida.  Accordingly, the Court will permit Plaintiff to conduct additional jurisdictional discovery to determine whether Florida has general jurisdiction over Defendant Bridgestone Corporation.

An appropriate Order accompanies this Memorandum Opinion.


Date:  September 18, 2013                    _____/s/_____
                                             WILMA A. LEWIS
                                             Chief Judge

---

was a proper forum, Plaintiff "promptly filed a motion to transfer" to a forum where he believed—based on the *Herron* decision—that Bridgestone was "unquestionably subject to the personal jurisdiction of the courts."  (Dkt. No. 37 at 2).  Under these circumstances, the Court—contrary to Bridgestone's contention—does not consider Plaintiff's request for additional jurisdictional discovery to be a "fishing expedition based only upon bare allegations."  *Cf. Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010).