**FOR PUBLICATION**

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| **TROY FRANCIS,** | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | )   Civil Action No. 2010-0030 |
|  | ) |
| **BRIDGESTONE CORPORATION;** | ) |
| **BRIDGESTONE FIRESTONE** | ) |
| **NORTH AMERICAN TIRE, LLC; and** | ) |
| **BRIDGESTONE/FIRESTONE, INC.,** | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**Attorneys:**
**Kenneth Rick Alvis, Esq.,**
Birmingham, AL
**Vincent A. Colianni, II, Esq.,**
St. Croix, U.S.V.I.
    *For the Plaintiff*

**Bernard C. Pattie, Esq.,**
St. Croix, U.S.V.I.
**Joseph C. Weinstein, Esq.**
Cleveland, OH
    *For the Defendant Bridgestone Corporation*

**Colin Paul Smith, Esq.,**
Chicago, IL
**Marc R. Brosseau, Esq.,**
Greenwood Village, CO
**Lee P. Teichner, Esq.**
Miami, FL
**Stacy L. White, Esq.**
St. Croix, U.S.V.I.
    *For the Defendants Bridgestone Firestone North American Tire, LLC and*
    *Bridgestone/Firestone Inc.*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff's Motion to Transfer the action to the U.S. District Court for the Southern District of Florida. (Dkt. No. 97). For the reasons discussed below, the Court will deny the Motion and dismiss Plaintiff's Complaint.

## I. BACKGROUND

Plaintiff Troy Francis filed a Complaint on April 28, 2010 in this strict liability and negligence action. (Dkt. No. 1). Defendant Bridgestone Corporation ("Bridgestone"), the only defendant remaining in this action, is a Japanese corporation with its principal place of business in Tokyo, Japan. (*Id.* at ¶ 1).[1] The Complaint alleges that Bridgestone is liable for injuries that Plaintiff sustained in a car accident in St. Croix, Virgin Islands. (*Id.* at ¶¶ 7-23).

According to the Complaint, Plaintiff was driving his 2005 Mitsubishi Lancer automobile—equipped with a Bridgestone Potenza tire—on the Melvin Evans Highway in St. Croix on February 9, 2008. (*Id.* at ¶ 7). Plaintiff lost control of the vehicle when the tread on the Potenza tire allegedly separated, causing the vehicle to leave the road and overturn. (*Id.*). As a result, Plaintiff alleges that he "suffered severe and permanent injuries during the accident," including fractures of the neck, ribs, and forearm, brain injury, lacerations, and disfigurement. (*Id.* at ¶¶ 7, 9). Plaintiff brings two causes of action—strict liability and negligence—alleging

---

[1] Plaintiff originally named three defendants in his Complaint: (1) Bridgestone; (2) Bridgestone Firestone North American Tire, LLC, a Delaware corporation with its principal place of business in Duluth, Georgia; and (3) Bridgestone/Firestone, Inc., an Ohio corporation with its principal place of business in Akron, Ohio. (*Id.* at ¶¶ 1-3). In a Memorandum Opinion and Order issued on September 11, 2013, the Court granted summary judgment in favor of Defendants Bridgestone Firestone North American Tire, LLC and Bridgestone/Firestone, Inc. (including their successor corporation, Bridgestone Americas Tire Operations, LLC ("BATO")), finding that there was no evidence that BATO sold or distributed Plaintiff's tires that were involved in his accident. (Dkt. Nos. 88, 89). Therefore, Bridgestone Corporation is the only remaining defendant in this matter.

that Bridgestone is strictly liable for the injuries that he sustained, or alternatively, that Bridgestone negligently manufactured, engineered, designed, marketed, tested or failed to test, inspected, distributed, and sold the subject tire. (*Id.* at ¶¶ 10-23).

Bridgestone filed a Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 7), on which the Court deferred ruling—instead granting Plaintiff ninety days to conduct limited jurisdictional discovery (Dkt. No. 14). Plaintiff subsequently filed a Motion to Transfer the action to the U.S. District Court for the Southern District of Florida. (Dkt. No. 25). In a Memorandum Opinion entered on September 18, 2013, the Court found that it lacked personal jurisdiction over Bridgestone, but determined that, if a Florida district court could exercise personal jurisdiction, a transfer to that court would be appropriate. (Dkt. No. 90 at 5, 10). The Court, however, questioned Plaintiff's reliance for jurisdiction in Florida on general assertions such as "Bridgestone Corporation boasts of having a 20 percent market share of the tire market in North America" and "Florida has the fourth biggest economy in North America and the twentieth biggest economy in the world." (*Id.* at 21). Because the Court concluded that the record was insufficient on the Florida jurisdiction question—including on whether Plaintiff could establish an agency relationship between Bridgestone and BATO so as to impute any BATO operations in Florida to Bridgestone—it granted Plaintiff's request to conduct additional jurisdictional discovery, and denied Bridgestone's Motion to Dismiss and Plaintiff's Motion to Transfer without prejudice. (*Id.* at 22; Dkt. No. 91).

Plaintiff subsequently filed the instant Motion to Transfer, incorporating and supplementing his previous Motion to Transfer. (Dkt. No. 97). Bridgestone opposes Plaintiff's Motion. (Dkt. No. 99).

## II. DISCUSSION

In its September 18, 2013 Opinion, the Court found that 28 U.S.C. § 1631 provides an appropriate basis for the analysis of a potential transfer of this case. (Dkt. No. 90 at 8).[2] The § 1631 statutory requirements are two-fold: (1) that the action "could have been brought [in the transferee court] at the time it was filed"; and (2) that a transfer is "in the interest of justice." 28 U.S.C. § 1631. Analyzing the second prong, the Court concluded that a transfer to the U.S. District Court for the Southern District of Florida would be "in the interest of justice." (Dkt. No. 90 at 8-10). Therefore, the remaining question is whether the action "could have been brought" in the transferee court. Because Bridgestone has challenged the transfer of this action to Florida, Plaintiff bears the burden of proving that a Florida court could exercise personal jurisdiction over Bridgestone in order to fulfill the statutory requirement that the case "could have been brought" in Florida. *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1296 (11th Cir. 2009) (once defendant raises a challenge to personal jurisdiction, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents").

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Management, Inc.*, -- F.3d --, 2015 WL 3651521, at *2 (11th Cir. 2015) (quotation and citation omitted). Both prongs of this inquiry must be satisfied in order to establish personal jurisdiction over a nonresident defendant. *Id.*; *see Borden v. East-European Ins. Co.*, 921 So. 2d 587, 592 (Fla. 2006).

---

[2] A court may apply § 1631 to transfer a case even when it lacks personal jurisdiction over the action in its own forum. *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002).

4

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). Accordingly, because the Court concludes under the circumstances here that a Florida district court's exercise of general jurisdiction over Bridgestone would exceed constitutional bounds, it need not address whether the requirements of Florida's long-arm statute are satisfied.[3] *See Carmouche*, 2015 WL 3651521, at *2-3 (affirming dismissal of case against foreign corporation for lack of personal jurisdiction based solely on due process analysis, without addressing whether defendant corporation fulfilled the requirements of Florida's long-arm statute).[4]

---

[3] (*See* Dkt. No. 90 at 18) (Memorandum Opinion dated September 18, 2013) ("[T]o make a determination with respect to general jurisdiction under Florida's long-arm statute, a court need only determine whether the exercise of jurisdiction over a defendant by a court in Florida would exceed constitutional bounds.").

[4] Plaintiff asserts that, where a party fulfills the requirements of Florida's long-arm statute, it need not present additional evidence on whether it fulfills due process requirements. (*See* Dkt. No. 97 at 7-8). He therefore offers no argument regarding the constitutional propriety of a Florida district court exercising general jurisdiction over Bridgestone. The Court recognizes—as it did in its prior Memorandum Opinion to which Plaintiff cites—that there are a number of Florida lower court decisions which suggest that the Florida long-arm statute is construed to be "coextensive" with the Due Process Clause for purposes of personal jurisdiction such that the two analyses are one and the same. (*See* Dkt. No. 90 at 18). However, the Florida Supreme Court has clarified that "the federal due process analysis is *not* built into Florida's long-arm statute." *Internet Solutions Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010); *see id.* at 1207 ("The mere proof of any one of the several circumstances enumerated in section 48.193 [of the Florida long-arm statute] as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts."); *see also Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 859 (11th Cir. 2013) ("The Florida Supreme Court has explained that determining whether jurisdiction is appropriate under Florida's long-arm statute is a separate inquiry from determining whether exercising personal jurisdiction comports with the Due Process Clause.") (citing *Internet Solutions*, 39 So. 3d at 1207). Thus, Plaintiff is wrong in his assertion that an analysis under the Florida long-arm statute satisfies the due process inquiry. Rather, under the governing law: (1) Plaintiff must establish that general jurisdiction comports with both the state long-arm statute and due process requirements; (2) the Due Process Clause sets the outer boundaries of a Florida court's exercise of personal jurisdiction over an out-of-state defendant; and (3) the Supreme Court's decisions in *Goodyear* and *Daimler AG v. Bauman*, 134

A.      **Applicable Law**

General personal jurisdiction is invoked when—as here—the plaintiff's cause of action arises from the defendant's non-forum related activities. *See Isaacs v. Arizona Bd. of Regents*, -- F. App'x --, 2015 WL 1534362, at *3 (3d Cir. 2015). The "canonical decision" of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), announced that a state may exercise personal jurisdiction over an out-of-state defendant if the defendant has "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear*, 131 S. Ct. at 2853 (quoting *International Shoe*, 326 U.S. at 316). Addressing out-of-state corporate defendants, *International Shoe* established that general personal jurisdiction comports with due process only in "'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *International Shoe*, 326 U.S. at 318).

The Supreme Court has explained that a corporation's place of incorporation and principal place of business are the "quintessential paradigm" bases for the exercise of general jurisdiction over the corporation. *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). These affiliations justify general or "all-purpose" jurisdiction because they are "unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* In *Daimler*, the Supreme Court found that restricting general jurisdiction to these affiliations promoted predictability by allowing corporations "to structure their primary conduct with some minimum assurances as to where that conduct will and will not render them liable to suit," while also affording "plaintiffs

---

S. Ct. 746 (2014)—discussed below—provide the applicable legal standard for personal jurisdiction under the Due Process Clause. Accordingly, the Court need not engage in an analysis of the Florida long-arm statute if—as here—it concludes that a Florida court lacks general personal jurisdiction over Bridgestone under the constitutional inquiry.

recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* at 760-62.

Nevertheless, the Supreme Court in *Daimler* left open the possibility that, in an "exceptional" case, a court in a forum other than a corporation's principal place of business or place of incorporation may exercise general jurisdiction without offending due process. *See id.* at 761 n.19; *id.* at 760 ("[O]nly a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there."). The due process inquiry for general jurisdiction over a foreign corporation "is not whether a foreign corporation's in-state contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id.* at 762 (quoting *Goodyear*, 131 S. Ct. at 2851); *accord Isaacs*, 2015 WL 1534362, at *3. Additionally, in assessing whether a foreign corporation is "at home" in any given state in the United States, a court must engage in "an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20.[5]

---

[5] Although the Third Circuit has not yet applied *Goodyear* and *Daimler*, other circuits have acknowledged that the two decisions restrict a state's ability to subject a nonresident corporate defendant to general personal jurisdiction. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (recognizing that after *Goodyear* and *Daimler*, "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business"); *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 129 (2d Cir. 2014) (reversing a district court's grant of general jurisdiction where *Daimler* was handed down after oral argument and finding that defendant was not an "exceptional case" sufficient to justify the exercise of general jurisdiction); *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (noting that *Daimler* "makes clear the demanding nature of the standard for general personal jurisdiction over a corporation"); *see also Snodgrass v. Berklee Coll. of Music*, 559 F. App'x 541, 542 (7th Cir. 2014) (applying *Goodyear* and *Daimler*'s "essentially at home" standard in finding no general jurisdiction).

**B.     Analysis**

    **1.     Bridgestone's Direct Contacts with Florida**

In response to Plaintiff's Motion to Transfer, Bridgestone submitted an affidavit of Yuichi Hashiguchi—a manager in Bridgestone's Legal Department—containing the following averments relevant to the Court's general jurisdiction analysis: (1) Bridgestone is headquartered, and maintains its principal place of business, in Tokyo, Japan; (2) Bridgestone does not sell tires in Florida or anywhere else in the United States; (3) Bridgestone is not licensed to do business in Florida, does not maintain a registered agent for service of process in Florida, and has not authorized anyone to act as its agent in Florida; (4) Bridgestone does not operate, conduct, engage in, carry on, or transact business of any kind in Florida; (5) Bridgestone maintains no offices, places of business, post office boxes, or telephone listings in Florida and has never done so; (6) Bridgestone has no real estate, bank accounts, or other interest in property in Florida; (7) Bridgestone has not incurred any obligation to pay, and has not paid, any taxes in Florida; (8) Bridgestone has no agents, sales representatives, or employees in Florida; (9) Bridgestone has not designed, manufactured, sold, delivered, or issued warranties on any goods or products in Florida, nor has it participated in the decision to sell or deliver any goods or products to Florida; (10) to the extent that Bridgestone-brand tires are sold in retail outlets in Florida, none of those outlets are owned or operated by Bridgestone, and Bridgestone is not involved in such sales; and (11) Bridgestone has not conducted a recall or replacement program of any kind in Florida. (*See* Dkt. No. 99, Exh. 2).

As part of Plaintiff's additional jurisdictional discovery, he deposed Toshinobu Kobayashi as a corporate representative of Bridgestone, who repeated and supplemented Hashiguchi's sworn statement, including that: (1) Bridgestone's corporate headquarters are

located in Tokyo, Japan; (2) Bridgestone designs and manufactures its tires domestically in Japan; (3) Bridgestone sells its tires in Japan, and does not distribute tires in Florida; (4) Bridgestone has no physical facilities, property, or assets in Florida; (5) Bridgestone is not licensed to do business in Florida, and in fact does no business in Florida; (6) Bridgestone has no employees or sales agents in Florida; and (7) Bridgestone does not advertise in Florida. (*See* Dkt. No. 97, Exh. 1).

Plaintiff has not rebutted Bridgestone's evidence that it—the parent company—does no business in Florida or anywhere in the United States, and has no offices or employees in Florida. (*See* Dkt. No. 99, Exh. 2 at 1-2; Exh. 3 at 4-5). Despite being afforded the opportunity to conduct jurisdictional discovery, Plaintiff has been unable to establish direct contacts between Bridgestone and Florida so as to establish general jurisdiction over Bridgestone in Florida.

In the absence of such direct contacts, Plaintiff resorts to the proposition that "Bridgestone not only knows but intends, through ongoing systematic activities, its tires to be sold to consumers in the United States, including in Florida." (Dkt. No. 97 at 3).[6] However, even if true, Bridgestone's knowledge and intention that its tires—which are manufactured and sold in Japan—will be distributed in Florida are insufficient to support a Florida court's exercise of general jurisdiction over the foreign corporation. *See Daimler*, 134 S. Ct. at 757 ("Although the placement of a product into the stream of commerce 'may bolster an affiliation germane to *specific* jurisdiction,' . . . such contacts 'do not warrant a determination that, based on those ties,

---

[6] A contrary statement appears in the evidence proffered by Plaintiff. At a December 16, 2013 deposition—the transcript of which Plaintiff submitted with his renewed Motion to Transfer—Mr. Kobayashi stated that Bridgestone "does not know whether it[s] tires are sold in Florida." (Dkt. No. 97, Exh. 1 at 3).

the forum has *general* jurisdiction over a defendant.'") (quoting *Goodyear*, 131 S. Ct. at 2857);[7] *Goodyear*, 131 S. Ct. 2856 (rejecting "sprawling view of general jurisdiction" according to which "any substantial manufacturer or seller of goods would be amenable to suit, on any claim for relief, wherever its products are distributed"). Thus, based on the record before the Court, the Court finds that Bridgestone does not have sufficient contacts with Florida to render it "at home" in the state for purposes of a Florida court's exercise of general jurisdiction over the corporation.[8]

### 2. Bridgestone's Contacts with Florida Through its Subsidiary

Plaintiff also contends that the in-state operations of BATO, Bridgestone's wholly-owned subsidiary, justify a Florida court's exercise of general jurisdiction over Bridgestone. (Dkt. No. 97 at 4-7). In addressing this contention, the Court must first determine whether BATO is an agent of Bridgestone such that BATO's activities in Florida may be attributed to Bridgestone for jurisdictional purposes. Because district courts may exercise personal jurisdiction over nonresident defendants only to the extent authorized under the law of the forum state, the Court

---

[7] As a third exhibit to his renewed Motion to Transfer, Plaintiff offers *Alimanovic v. Bridgestone/Firestone North American Tire, LLC*, No. 02-003332-CI-13 (Fla. Cir. Ct. May 14, 2003), in which a Florida circuit court found that general jurisdiction over Bridgestone was appropriate in Florida. Relying on *dicta* in the Supreme Court's decision in *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), the court applied "stream of commerce" analysis to conclude that Bridgestone "reasonably could foresee, expect, and even desire that its tires" would be distributed in Florida. *Id.* at *7. However, given the Supreme Court's more recent precedent in *Daimler* and *Goodyear*, the Court will rely on those cases for guidance.

[8] Plaintiff also contends that Bridgestone "sells its tires in over 150 countries"; has "plants . . . and research centers on six different continents"; "has subsidiaries worldwide"; and has "nationwide chains of company-owned stores in Japan and the United States." (Dkt. No. 97 at 3); (*see* Dkt. No. 11, Exhs. 1, 2, 19). Even assuming that these contentions are true, rather than supporting Plaintiff's position, they reinforce that Bridgestone does not have the exceptional "at home" contacts *in Florida*—as opposed to anywhere else where Bridgestone or its subsidiaries operate. As the Supreme Court has noted: "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 134 S. Ct. at 762 n.20.

10

looks to Florida law to determine whether an agency relationship exists. *Cf. D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009).

A foreign parent corporation is not subject to the jurisdiction of a forum state simply because a subsidiary is doing business there. *Meier ex rel. Meier v. Sun Int'l Hotels*, 288 F.3d 1264, 1274 (11th Cir. 2002); *see Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. Dist. Ct. App. 2011) ("It is, of course, well settled that '[a] parent corporation and its wholly-owned subsidiary are separate and distinct legal entities.'") (quoting *American Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 336 (Fla. Dist. Ct. App. 2004)). A plaintiff relying on a subsidiary's acts carries the burden of demonstrating that the parent company exercises sufficient control over the subsidiary to establish an agency relationship. *Enic, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888, 891 (Fla. Dist. Ct. App. 2004).

To establish an agency relationship, the amount of control exercised by the parent must be "high and very significant . . . to the extent that the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *Id.* (quoting *State v. American Tobacco Co.*, 707 So. 2d 851, 851 (Fla. Dist. Ct. App. 1998)); *see Meier*, 288 F.3d at 1274 ("Where the subsidiary's presence in the state is primarily for the purpose of carrying out its own business and the subsidiary has preserved some semblance of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the subsidiary's local activities."). Thus, the fact that a subsidiary reports to its parent corporation is insufficient; instead, a parent must "control[] the internal day-to-day affairs" or operations of the subsidiary. *See Enic*, 870 So. 2d at 891 (citing *General Cigar Holdings, Inc. v. Altadis, S.A.*, 205 F. Supp. 2d 1335 (S.D. Fla.), *aff'd* 54 F. App'x 492 (11th Cir. 2002) (finding no personal jurisdiction over a parent with a Florida subsidiary where, despite "regular and

extensive contact" and a "very close working relationship" between the parent and the subsidiary, there was no evidence that the parent controlled the subsidiary's daily "basic operation").

In support of Plaintiff's assertion that Bridgestone exerts the necessary control over BATO, Plaintiff offers the following: (1) statements by Bridgestone CEO and President Yoichiro Kaizaki—in 2000—that he may change management personnel and structure at BATO; (2) evidence that—as of 2001—at least ten individuals had served on both the BATO and Bridgestone Board of Directors; (3) testimony—from the 1990s—that Bridgestone "advisors" were stationed at manufacturing and technical plants in the United States; and (4) evidence that Bridgestone requires its subsidiaries to abide by its Administrative Authority Rules, which stipulate that the parent company must advise or approve "certain important issues" of the subsidiaries. (*See* Dkt. No. 97 at 4-5, 7).

Through the sworn statement of Yuichi Hashiguchi, Bridgestone avers that it: (1) has never controlled the daily operations of BATO; (2) does not conduct business in the United States or anywhere else through BATO; (3) maintains formal barriers between management at Bridgestone and BATO, such as separate shareholder and board of directors meetings; (4) does not share common departments with BATO; (5) maintains separate books and accounts from BATO; and (6) does not control or participate in the marketing or sales decisions of BATO. (Dkt. No. 97, Exh. 3 at 4-5). Moreover, the excerpt from Bridgestone's Business Report for the 92nd Fiscal Period (January 1 to June 30, 2010), which Plaintiff attached to his renewed Motion to Transfer, states that "[s]ince each company of the [Bridgestone] Group is an independent entity, Bridgestone Corporation respects each company's decisions and business operations made and executed by the bodies of each company." (Dkt. No. 97, Exh. 2 at 2).

Based on the guidance of Florida courts, the Court concludes that Plaintiff's proffer is insufficient to establish that Bridgestone had the operational control over BATO necessary to establish an agency relationship for jurisdictional purposes. In addition to the dated nature of the evidence proffered by Plaintiff,[9] the amount of control reflected is not of the "high and very significant" nature required to create agency status. *See Enic*, 870 So. 2d at 892 (finding insufficient evidence of day-to-day operational control); *Development Corp. of Palm Beach v. WBC Const., L.L.C.*, 925 So. 2d 1156, 1161-62 (Fla. Dist. Ct. App. 2006) (concluding that a foreign parent corporation did "not exert sufficient control over [the subsidiary] to justify jurisdiction" where the parent: shared at least one officer with its subsidiary; had authority to approve some expenditures of its subsidiary; had to approve the purchase or sale by its subsidiary of any asset valued in excess of $25,000; had to approve the purchase of vehicles by its subsidiary; audited its subsidiary on an annual basis and reported the subsidiary's profits and losses on a consolidated financial statement; processed its subsidiary's payroll; and represented its relationship with its subsidiary as a "joint venture," stating in a website article that it was acting through a subsidiary); *Faro Techs., Inc. v. Cimcore Corp.*, 2006 WL 1119223, at *4-6 (M.D. Fla. Apr. 27, 2006) (rejecting claim of agency relationship between Delaware parent corporation and two Florida subsidiaries where the parent existed solely to hold stock in the subsidiaries; the parent and subsidiaries shared common officers and at least one director; the chief financial officer of both subsidiaries, with the assistance of subsidiary employees, prepared the parent's tax returns because the parent had no employees of its own; one subsidiary paid for work performed for the parent by subsidiary employees; and one subsidiary provided office space for the parent, rent free); *see also Abramson v. Walt Disney Co.,* 132 F. App'x. 273, 276-

---

[9] It is noteworthy that, even after being afforded the opportunity to conduct jurisdictional discovery, Plaintiff continues to rely on evidence that dates back to the 1990s and early 2000s.

77 n.2 (11th Cir. 2005) (concluding that a foreign parent corporation could not be subjected to general jurisdiction in Florida based on agency relationship with subsidiaries notwithstanding that the chairman of the foreign parent's board of directors had stated in internet articles and letters to shareholders that he was directly involved in operations in Florida and all of the brand-related enterprises were in the business of maximizing profits for the parent through their "interdependence"). Accordingly, the Court finds that there is no agency relationship between Bridgestone and BATO so as to support the exercise of general jurisdiction over Bridgestone in Florida.

### 3. *Daimler* General Jurisdiction

Even if the Court were to assume that the activities of BATO in Florida are imputable to Bridgestone under an agency theory, the Court finds that this is not one of the "exceptional" cases where Bridgestone may be subjected to general jurisdiction in Florida.

In *Daimler*, the Supreme Court held that California courts could not exercise general personal jurisdiction over a German company with a wholly-owned subsidiary that did business in California. 134 S. Ct. at 751. The defendant parent corporation was headquartered in Germany and manufactured luxury vehicles in Germany. *Id.* at 752. The subsidiary was a Delaware limited liability corporation with its principal place of business in New Jersey. *Id.* The Court explained that California courts could not exercise general personal jurisdiction over the parent company even if the subsidiary's contacts with California were attributed to the parent. *Id.* at 760. The Court reached this conclusion notwithstanding that: (1) the company's subsidiary was the largest supplier of luxury vehicles to the California market; (2) the subsidiary had multiple California-based facilities; (3) over 10% of all sales of defendant's new vehicles in the United States took place in California; and (4) the subsidiary accounted for 2.4% of the parent's worldwide sales.

*Id.* at 752. According to the Court, these connections were not of the type to render the defendant corporation "at home" in California. *Id.* at 763.

Here, Bridgestone is headquartered in Japan and manufactures and sells its tires in Japan. (Dkt. No. 99, Exh. 3 at 1). BATO is a Delaware limited liability corporation. (*Id.* at 2). Plaintiff asserts that: (1) BATO distributes Bridgestone-manufactured tires in Florida; (2) in 1999, "Bridgestone" had a market share in North America approaching 20%, making the global company the second-largest supplier of its tires on the continent; (3) Florida has the fourth biggest economy in North America and the twentieth biggest economy in the world; and (4) "Bridgestone" is the second-largest supplier of tires in North America. (Dkt. No. 97 at 3, 4 & n.5).[10]

Even assuming that the sum of Plaintiff's allegations is true—that a substantial number of Bridgestone tires end up being sold by Bridgestone's subsidiaries in Florida because Florida has a large economy and the Bridgestone brand has a significant market share in the United States—the Supreme Court in *Daimler* advised that a foreign corporation cannot be "at home" in a state for general jurisdiction purposes solely because it "engages in a substantial, continuous, and systematic course of business [there]." 134 S. Ct. at 760.[11] In other words, even if Bridgestone,

---

[10] Although Plaintiff names "Bridgestone" in these assertions, it is apparent that these references are to the Bridgestone brand—rather than Bridgestone Corporation, the Japanese-incorporated parent company.

[11] As previously discussed, *see supra* note 7, Plaintiff relies on *Alimanovic*, in which a Florida circuit court found that general jurisdiction over Bridgestone was appropriate based, in part, on Bridgestone's close relationship with Bridgestone/Firestone (BATO's predecessor corporation), including Bridgestone's "handling some of Bridgestone/Firestone's testing, manufacturing, and public relations work as well as maintaining a continuous information exchange in the areas of design, testing, and research and development." (Dkt. No. 97, Exh. 3 at 7). The court in *Alimanovic* stated that this evidence "is sufficient for the Court to find that Bridgestone has maintained, through Bridgestone/Firestone acting as a distributor, continuous and systematic

through its subsidiaries, has been a significant supplier of tires to the Florida market, this affiliation alone is not of the "at home" nature to justify the exercise of general jurisdiction over Bridgestone in Florida for a St. Croix-based personal injury dispute. *See id.* at 761 (rejecting as an "exorbitant exercise[] of all-purpose jurisdiction" the notion that a foreign corporation could be subject to general jurisdiction in any state where its sales were sizable). Moreover, as discussed above, *see supra* Section II.B.1, there is a striking absence of direct contacts between Bridgestone and Florida. *See Chavez v. Dole Food Co.*, 947 F. Supp. 2d 438, 443 (D. Del. 2013) ("[W]hile Chiquita's contacts with Delaware are regular, and may be economically substantial, they are not of the 'at home' variety. There are no allegations that Chiquita has any Delaware employees or does anything in Delaware other than maintain a facility and distribute bananas, albeit a lot of bananas."). Accordingly, because on the record here the Court concludes that Bridgestone's contacts with Florida are not so continuous and systematic as to render it "at home" in Florida, the Court finds that a Florida court could not exercise general personal jurisdiction over Bridgestone in this matter without offending due process.[12]

---

contacts with the State of Florida." (*Id.* at 8). However, given *Daimler*, even such a finding is insufficient to render a corporation "at home" in the state. *See* 134 S. Ct. at 760.

[12] Finally, Plaintiff relies on a Florida statutory provision, section 48.181(3), to argue that "Bridgestone's admission that its Japanese-made tires are distributed in each of the United States by its U.S. subsidiary, BATO, is conclusive evidence" that Bridgestone is not only "doing business" in Florida, but is "engaged in substantial and not isolated activities" for purposes of establishing general jurisdiction under section 48.193(2) of Florida's long-arm statute. (Dkt. No. 97 at 6-7); *see* Fla. Stat. § 48.181(3). Regardless of whether this provision is interpreted in the manner asserted by Plaintiff, Plaintiff must still establish that Bridgestone fulfills the constitutional due process requirements specified by the Supreme Court in *Goodyear* and *Daimler*. Because the Court concludes that Plaintiff has not carried this burden, the Court need not address Plaintiff's reliance on section 48.181(3).

### C.  Dismissal

Generally, "a court may not *sua sponte* dismiss for lack of personal jurisdiction" because "personal jurisdiction may be conferred by consent of the parties." *Jasper v. Bexar Cnty. Adult Detention Ctr.*, 332 F. App'x 718, 719 (3d Cir. 2009) (quoting *Zelson v. Thomforde*, 412 F.2d 56, 59 (3d Cir. 1969)). Here, however, Bridgestone's Opposition to Plaintiff's Motion to Transfer (Dkt. No. 99) clearly indicates that Bridgestone does not consent to jurisdiction in Florida. Having previously found that the Court lacks personal jurisdiction over Bridgestone in the District of the Virgin Islands (Dkt. No. 90), and having determined herein that a Florida court could not exercise general jurisdiction over Bridgestone, the Court concludes that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) is appropriate.[13]

### III.  CONCLUSION

Plaintiff has not introduced evidence sufficient to establish that a Florida court could exercise general jurisdiction over Bridgestone such that Plaintiff "could have brought the action" in Florida, as required by 28 U.S.C. § 1631. Accordingly, the Court will deny Plaintiff's Motion to Transfer and dismiss Plaintiff's Complaint.

An appropriate Order accompanies this Memorandum Opinion.

Date:  July 14, 2015               _____/s/_____
                                    WILMA A. LEWIS
                                    Chief Judge

---

[13] Because the Court will dismiss Plaintiff's Complaint, the Court will deny as moot "Defendants' Joint Motion to Exclude Expert Testimony of Troy Cottles" (Dkt. No. 70).